**Michael E. RIGGS, Plaintiff/Appellant,**

v.

**ROYAL BEAUTY SUPPLY, INC., Defendant/Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Jan. 24, 1994.

Permission to Appeal Denied by Supreme Court May 9, 1994.

James M. Crain, Knoxville, for plaintiff/appellant.

Geoffrey E. Kressin, Knoxville, for defendant/appellee.

## OPINION

McMURRAY, Judge.

The plaintiff filed a three count complaint against the defendant. In the first count, he alleged that as an employee of the defendant, he was required to enter into a non-competition agreement as a condition of employment and sought a declaratory judgment as to the validity of the agreement.[1] In the second count, he asserted that the defendant tortiously interfered with his new employment and sought treble damages therefor pursuant to T.C.A. § 47–50–109. In his third count, the plaintiff alleged the tort of outrageous conduct.[2]

The primary thrust of the plaintiff's case is that the defendant employed a lawyer who wrote letters to the plaintiff asserting that the plaintiff was in violation of the non-competition agreements which he had executed when employed by the defendant, and as a result of these letters, the plaintiff was terminated by his new employer. He claims that the defendant's assertion that he was in violation of the contracts was unreasonable because the non-competition agreements which the plaintiff executed were unenforceable under the laws of the State of Tennessee.

A trial was begun before a jury. At the conclusion of the plaintiff's proof, the defendant moved for a directed verdict which was granted. From this action, the appellant perfected his appeal. For reasons hereinaf-

---

1. This count was not litigated but was non-suited by order entered on July 28, 1992.

2. This count was dismissed by order entered on June 8, 1992.

ter stated, we affirm the action of the trial court.

The following issues are presented for our consideration:

1. The trial court erred in sustaining defendant's objection to the testimony of A.J. Peters concerning the contents of the letter which he received, and which he testified provided the motivation for the termination of the plaintiff's employment.

2. The trial court erred in sustaining defendant's motion for a directed verdict at the close of plaintiff's proof.

3. The trial court erred in ruling that, in order to commit the tort of intentional interference with employment, the defendant had to intentionally and directly threaten plaintiff's new employer, and that such a tort could not be established where plaintiff relayed to his employer threats made to him personally.

■ As to the first issue, the defendant insists that a witness, one A.J. Peters, should have been allowed to testify to the contents of a letter that the plaintiff claims Peters received from an attorney for the defendant. The witness did not have the letter but intended to testify from memory. The proffered testimony which the court excluded consisted of the following:

Q. During his employment, did you become aware of a dispute between Mr. Riggs and Royal Beauty Supply concerning his employment with you?

A. I received a letter from an attorney representing Royal saying that Mr. Riggs was under contract, and that if we did not stop working him in any of the territory of Royal Beauty Supply, that he and I would be sued and we should fire him immediately.

MR. KRESSIN: I'm going to object to that. The letter is the best evidence of what it says, and Mr. Peters has already indicated he's going by memory. If he has the letter, he can certainly produce it.

THE WITNESS: I'm sorry. I don't have the letter. I know for a fact—

MR KRESSIN: Then I object to all his testimony.

THE WITNESS: —I know for a fact that the letter stated he was under contract, and that both he and we would be sued by Royal if he were to continue his employment by us. Otherwise, I would have had no reason to dismiss him.

MR. KRESSIN: We still object to it.

Q. Do you recall the name of the attorney that contacted you.

A. No, Sir, I do not.

On further examination, the witness stated: "I terminated Mr. Riggs strictly on the basis of the letter. Now, I want to get one thing straight for the record here too. Again, I say from memory, and to be absolutely honest, *I do not remember if I received the letter or if Mike [the plaintiff] showed me that letter, but I saw a letter which said he was under contract.*" (Emphasis added). We are of the opinion that, under these circumstances the proffered evidence had no probative value whatever and added nothing to the plaintiff's case.

■ Additionally, no proper foundation was established to satisfy the requirements of Rule 1002 and Rule 1004 of the Tennessee Rules of Evidence. Rule 1002 provides as follows:

**Rule 1002. Requirement of original.—** To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by Act of Congress or the Tennessee Legislature.

Rule 1004 provides as follows:

**Rule 1004. Admissibility of other evidence of contents.**—The original is not required, and other evidence of a writing, recording, or photograph is admissible if—

(1) Originals Lost or Destroyed.—All originals are lost or destroyed, unless the

proponent lost or destroyed them in bad faith; or

(2) Original Not Obtainable.—No original can be obtained by any available judicial process or procedure; or

(3) Original in Possession of Opponent.—At a time when an original was under the control of the party against whom offered, that party was put on notice by the pleadings or otherwise that the contents would be a subject of proof at the hearing but does not produce the original at the hearing; or

(4) Collateral Matters.—The writing, recording, or photograph is not closely related to a controlling issue.

None of these conditions were shown to have existed. The witness simply stated: "I'm sorry. I don't have the letter."

We find no merit in this issue.

■ As to the remaining issues, the common law tort of wrongfully procuring a breach of contract has been codified in T.C.A. § 47–50–109. Our Supreme Court in *Emmco Insurance Co. v. Beacon Mutual Indemnity Co.*, 322 S.W.2d 226 (Tenn.1959) observed:

Considering the intention of the Legislature in passing the statute relied on (T.C.A. § 47–1706), (now T.C.A. § 47–50–109), we think it was designed as a protection against wilful wrongs, such as inducing employees to break their contracts with their employers which would result in injury and damage to the latter's business interest. *The statute is declaratory of the common law except as to the amount of damages that may be recovered against a wrongdoer.* (Emphasis added).

In *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn.App.1987), this court set out the necessary elements that must be established to maintain a cause of action for inducement to breach a contract, both at common law and under T.C.A. § 47–50–109. The court stated:

The plaintiff must prove: (1) that there was a legal contract; (2) that the wrong-doer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach. (Citations omitted).

Id., page 173.

In ruling on the defendant's motion for a directed verdict, the trial judge made the following observations:

... [I]n Tennessee ... to have an inducement of breach of contract action, it must be established that the defendant acted maliciously. And malice, in this sense, is not factual malice, that is, hatred or spite or ill will. It's legal malice, and legal malice simply means a wilful violation of a known right, and as some of the cases have very actively said in a legal sense, malice is nothing more than the absence of justification.

So if the plaintiff has to prove malice, then the plaintiff has to prove lack of justification.... [B]ut it is clear, under the law, that this is an intentional tort and the plaintiff must prove, must offer some evidence from which the jury could find that the defendant intended to procure a breach of contract and that the defendant took some action which brought about the breach of the contract.

Here in this record, it seems to me that we have nothing more than the fact that the defendant went to a lawyer and asked the lawyer to represent the defendant in its claim that Mr. Riggs was violating two contracts that he had signed; and the defendant wrote Mr. Riggs' letters stating that defendant's position. The lawyers wrote those letters stating the defendant's position.

We concur with the trial judge that there is no evidence in the record from which a jury could reasonably find that the defendant acted maliciously or in any way intended to induce or procure a breach of contract or

took any improper action which brought about a breach of contract. Further, under the evidence as presented in this case, we are of the opinion that the defendant would have been justified in litigating the question of whether or not the plaintiff had breached the non-competition agreements between the plaintiff and the defendant. In *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361 (1966), the court observed: "Numerous cases could be cited where covenants have been declared unreasonable because of their excessive territorial limits; however, these provide little direction since the question of reasonableness must be decided on an *ad hoc* basis." Thus, it cannot be said that the agreements in this case are illegal and unenforceable, *per se*.

Accordingly, we affirm the judgment of the trial court in all respects. Costs of this appeal are taxed to the appellant and this case is remanded to the trial court.

GODDARD and FRANKS, JJ., concur.