ALLRIGHT AUTO PARKS, INC., et al.

*v.*

JAMES C. BERRY.

409 S.W.2d 361.

(*Knoxville,* September Term, 1966.)

Opinion filed November 14, 1966.

VINCENT W. VORDER BRUEGGE, Memphis, for appellants.

W. A. WILKERSON, Chattanooga, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This case concerns an appeal from an order of the trial court sustaining the demurrer of the appellee and dismissing part of the amended bill of the appellants.

The parties will hereinafter be referred to as they appeared in the trial court; that is, Allright Auto Parks, Inc., as the complainant, and James C. Berry as the defendant.

The germane facts out of which this controversy arose are, as follows:

During 1962 numerous parking firms, located throughout seventeen states of the United States and in the City of Vancouver, British Columbia, Canada, were amalgamated and Allright Auto Parks, Inc., a Delaware corporation, thereby became the parent corporation of all of said firms. Prior to the amalgamation these independent parking firms consisted of sole proprietorships, partnerships, and corporations; but, as an incident to the merger, each firm was incorporated.

Included within the constituent subsidiary firms were two Tennessee corporations, Allright Chattanooga, Inc. and Allright Tennessee, Inc., both of which were partially owned by their president, the defendant, James C. Berry. In addition the defendant was president and stockholder of Allright Augusta, Inc., and Allright South Carolina, Inc., both corporations which operated parking facilities

in Augusta, Georgia, and Columbia, South Carolina. Three of these corporations were partnerships prior to the amalgamation process.

Pursuant to the Plan and Agreement of Amalgamation, the defendant, James C. Berry, transferred to Allright Auto Parks, Inc., his shares of stock in the four corporations hereinabove mentioned, and, in exchange, received four thousand shares of stock in the parent corporation, Allright Auto Parks, Inc.

Also in conjunction with the Plan and Agreement of Amalgamation, all of the managers and executives of the previously independent parking firms were required to execute a standard form of Management Contract. Among other things, said contracts contained the following restrictive covenant:

"Manager agrees that during the period this contract is in effect and for a period of five (5) years after the date of termination or expiration, he will not engage, either directly or indirectly, in the business of parking automobiles in the subject city or in any other city in which he shall participate during his employment in the parking business as part owner, director or manager of Employer, its subsidiaries, affiliates or licensees, or in any city in which the parent corporation of Employer is engaged in the parking business."

The defendant James C. Berry, voluntarily executed the standard Management Contract.

Upon the amalgamation, the date of which occurred subsequent to the drafting of the Management Contract, the defendant was elected vice-president of the complainant parent corporation, Allright Auto Parks, Inc.

In this capacity and as a member of the Audit Committee, he actively served the complainant corporation until his resignation in November, 1965.

The record reflects that shortly before and since his resignation from the complainant corporation, the defendant has engaged in competition with the complainant, notwithstanding the interdiction of such competition contained in the Management Contract executed by defendant on July 1, 1966.

On February 22, 1966, complainant initiated this suit by filing a bill in the Chancery Court of Hamilton County, Tennessee, to recover damages for violation of the contract and to enjoin the defendant from further competition.

To this bill the defendant interposed a demurrer which, in essence, assailed the noncompetition agreements as being unreasonable as to time and area incompassed, unduly harsh and oppressive to the defendant, and beyond any reasonable necessity to protect the legitimate interest of the complainant, and therefore invalid and unenforceable.

Being in agreement with the defendant's contention, the Chancellor sustained the demurrer and it is the propriety of his decision which is now under scrutiny by this Court.

The validity and enforceability of covenants not to compete is not a question of first impression in this jurisdiction. On many occasions the courts of this state have endeavored to outline the rules governing such restrictive covenants. See e.g., *Turner v. Abbott*, 116 Tenn. 718, 94 S.W. 64, 6 L.R.A.,N.S., 892; *Matthews v.*

*Barnes,* 155 Tenn. 110, 293 S.W. 993, 52 A.L.R. 1350; *Di-Deeland, Inc. v. Colvin,* 208 Tenn. 551, 347 S.W.2d 483; *Arkansas Dailies, Inc. v. Dan,* 36 Tenn. App. 663, 260 S.W.2d 200; *Federated Mutual Implement and Hardware Ins. Co. v. Anderson,* 49 Tenn. App. 124, 351 S.W.2d 411; *Greene County Tire and Supply, Inc. v. Spurlin,* 207 Tenn. 189, 338 S.W.2d 597.

█ Agreements in restraint of trade, such as covenants restricting competition, are not invalid per se. Although disfavored by law, such agreements are valid and will be enforced, provided they are deemed reasonable under the particular circumstances. See, *Greene County Tire and Supply, Inc. v. Spurlin,* supra; *Di-Deeland, Inc. v. Colvin,* supra; *Matthews v. Barnes,* supra, Restatement of the Law, Contracts, sec. 514, p. 987.

█ There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned. Each case must stand or fall on its own facts. However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are: the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest. See 17 C.J.S. Contracts, sec. 247, p. 1124; Williston on Contracts, Vol. 5, sec. 1636, pp. 4581-4; *Welcome Wagon, Inc. v. Morris,* 224 F.2d 693 (C.C.A., Fourth Circuit)

█ It is generally agreed that, before a noncompetitive covenant will be upheld as reasonable and therefore enforceable, the time and territorial limits involved must

be no greater than is necessary to protect the business interests of the employer. See, e.g., *Matthews v. Barnes,* supra; *Arkansas Dailies, Inc. v. Dan,* supra; *Federated Mut. Imp. and Hwe. Ins. Co. v. Anderson,* supra; 17 C.J.S. Contracts, secs. 238-258, pp. 1106-1158.

That is the rule adopted and succinctly stated in the Restatement of the Law, Contracts, sec. 515, p. 988:

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it:

"(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed,"

Based upon the foregoing, the ultimate question presented in the case sub judice appears to be whether or not the time and territorial limits of the noncompetition agreement are greater than is required to protect the business interest of the complainant.

As heretofore stated, the agreement prohibits the defendant from competing for a period of five years in any city in which the complainant operates. We are of the opinion that the agreement is unreasonable since the area encompassed in the prohibition is beyond what is necessary to shield the complainant from unfair competition; therefore, the covenant is unenforceable.

The record reflects that the defendant has been employed as a manager in only three of the cities in which the complainant operates. However, were this Court to uphold the contract, the defendant would be precluded from competing in forty-six cities throughout the United States and Canada. Under the circumstances, we feel

that the threatened competition to the complainant does not outweigh the undue oppression which would befall the defendant, were we to sustain the agreement.

The rule appears to be prevalent that noncompetition covenants, which embrace territory in which the employee never performed services for his employer, are unreasonable and unenforceable. That rule is clearly stated with numerous supporting citations in 43 A.L.R. 2d 175, sec. 66:

> "A number of cases specifically deal with the enforceability of the restrictive covenants as affected by the inclusion in its territorial scope of territory in which the employee never during the course of his employment acted for his employer, although such territory belonged to the employer's established business area. * * *
>
> "Generally speaking, territorial restraints of this type are unreasonable under the customer-contract theory and render the restrictive covenant unenforceable.
>
> "In accordance with the above principle, the result was reached in the great majority of the cases in which this specific factor was mentioned, that the inclusion of such territory rendered the restrictive covenant unenforceable on the ground that the territorial scope of the restraint was unreasonable in the sense that it was not necessary for the protection of the employer's business."

In 17 C.J.S. Contracts, sec. 254, p. 1148, the author states:

> "Area limitations are reasonable if restricted to the area in which the employee was engaged in the course

of his employment; but, unless trade secrets are involved, *a covenant restricting an employee beyond the area of his former operations is invalid, even though the employer's business extends throughout the area designated.*" (Emphasis added.)

Numerous cases could be cited where covenants have been declared unreasonable because of their excessive territorial limits; however, these provide little direction since the question of reasonableness must be decided on an *ad hoc* basis. As is stated by Professor Williston in his learned treatise on contracts, the ultimate question in each case should be "what is necessary for the protection of the promisee's rights and is not injurious to the public." Williston on Contracts, Vol. 5. Sec. 1643, pp. 4606, 4608.

Complainant emphatically insists that his business interests can be protected only by restraining the defendant from competing in all cities wherein the complainant operates. It is asserted that, while serving as vice-president and as a member of the audit committee of the complainant corporation, the defendant gained access to valuable trade secrets and confidential information; and, that this information makes the defendant a "damaging and lethal competitor."

Without determining whether or not the information acquired by the defendant constitutes trade secrets or confidential information, we are compelled to reject this contention.

It is the duty of this Court to construe contracts as of the date of their making. Our exegesis of such agreements cannot be based upon events occurring sub-

sequent to their execution. 17A C.J.S. Contracts, secs. 294, 321, pp. 27, 214. At the time the present contract was consummated, the agreement was executed by the defendant in his capacity as manager and executive of some of the previously independent parking firms. The contract was a standard one which was executed by *all* managers and executives of those firms participating in the amalgamation. We concur with the Chancellor that the noncompetitive covenant of the management contract has no application or significance insofar as the parent corporation is concerned. Defendant's election as vice-president of the parent corporation and his appointment to the audit committee were events that went beyond the coverage of the management contract. As was stated by the Chancellor, no provision of the contract compelled the defendant to perform executive functions directly for the complainant corporation. His services rendered to the parent corporation were completely distinct from his services rendered as manager of the subsidiary firms under the management contract. Consequently, our construction of the management contract must not be based upon information acquired by the defendant in his capacity as an executive and director of the parent corporation.

The bill herein, as amended, sought to completely prohibit the defendant from engaging in the business of parking automobiles in the forty-six (46) cities named in the bill, stretching from coast to coast and from the Gulf of Mexico into Canada.

The Chancellor in his memo opinion summed up his holding thus:

"Having been required under the contract to work only in three cities, the prohibition sought to be extended to

cover forty-three additional cities is unreasonable, unduly harsh and exceedingly oppressive as to area. There is no averment in the bill that defendant ever had worked or performed any services pursuant to the employment agreement in the parking business in (naming forty-three cities in various states, etc.). Had the employer not undertaken to include all cities in which the parent corporation was engaged in the parking business, the right to restrain the employee might have been secured. It is possible that the defendant's activities might turn out to be a breach of duty as a director when that part of the cause is heard on the merits.''

■ We are guided in our reasoning by the modern trend of courts which is to construe noncompetition contracts favorable to the employee. *Matthews v. Barnes,* supra.

While there have been convincing arguments and briefs by counsel for both parties, we feel compelled to sustain the finding of the Chancellor that the noncompetition covenant in question is unreasonable and therefore unenforceable.

The decision of the Chancellor is affirmed.