IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2000 Session

## PATRICIA K. BAKER, individually and PATRICIA K. BAKER, d/b/a PATTY'S PAMPERED NAILS, v. TIFFANY HOOPER (MOATES), and JULIA RENAE ELLISON, and ANNETTE GOINES, and DAWN WEIR, and ANNETTE GOINES and DAWN WEIR as co-owners of and d/b/a VOGUE BEAUTY SALON

Direct Appeal from the Circuit Court for McMinn County
No. 21493     Hon. Russell Simmons, Circuit Judge

**FILED MARCH 15, 2001**

**No. E2000-01615-COA-R3-CV**

Plaintiff appeals the Court's modification of her non-competition agreement with defendants and the amount of damages awarded, as well as the Court's refusal to recuse. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Vance L. Baker, Jr., Athens, Tennessee, for Appellants.

Steven B. Ward, Madisonville, Tennessee, for Appellee, Dawn Weir.

Larry B. Nolen, Athens, Tennessee, for Appellee, Annette Goines Johnson.

H. Chris Trew, Athens, Tennessee, for Appellees, Tiffany Hooper (Moates) and Julia Renae Ellison.

**OPINION**

In this action to enforce a non-competition clause in an owner/independent contractor agreement, Patricia K. Baker ("Baker"), d/b/a Patty's Pampered Nails, appeals from the Trial Court's judgment dismissing her claims against defendants Annette Goines and Dawn Weir, individually and

as co-owners of Vogue Salon. The Court also modified the non-competition agreement and awarded nominal damages against defendants Tiffany Hooper Moates ("Moates")and Julie Renae Ellison ("Ellison").

Baker is owner/operator of a nail salon in Athens, Tennessee, and in her Complaint, she alleged that Moates and Ellison breached their employment contract, and that Goines and Weir, co-owners of Vogue Salon, induced Moates and Ellison to breach their respective contracts.

The contracts between Baker and Moates and Ellison provide in pertinent part:

THE OWNER AND CONTRACTOR AGREE TO OBSERVE THE FOLLOWING MUTUAL STIPULATIONS:

5. To keep a Client Profile and record which will be the property of Owner and information not to be taken from premises.

8. Contractor is not to compete by opening another licensed nail salon in Contractors name or being the managing nail technician of a competitive nail salon in McMinn County for one (1) year subsequent to termination date from Patty's Pampered Nails, or working as a nail technician in another salon or store for six (6) months in McMinn County subsequent to termination date from Patty's Pampered Nails.

14. Contractor shall be responsible for and pay all her withholding taxes, including, but not limited to, federal withholding, medicare and social security. Owner will provide Contractor with 1099 form annually.

15. Advertising expenses will be divided pro-rata among Contractors and Owner except for telephone advertising expenses which will be paid by the Owner.

Subsequently, defendants were granted a summary judgment on the basis that the covenant not to compete constituted, an unreasonable restraint on trade and was unenforceable. On appeal to this Court, we held that Tennessee law allows non-compete covenants in independent contractor relationships, and that Baker had a legitimate business interest to protect. The case was remanded for additional findings concerning the reasonableness of the provisions of the non-compete covenant.

The case was tried, and the Court dismissed defendants Goines and Weir, and held that the non-compete clause was unreasonable and modified the limitation from six months to two months. The court then found that Moates and Ellison had violated the modified non-compete agreement by practicing as nail technicians within two months of their termination of employment.

-2-

The Court further found that Baker had failed to mitigate her damages and failed to prove any actual damages. The Court then awarded nominal damages in the amount of $100.00 against each of these defendants.

Our review of this Appeal is *de novo* upon the record, with a presumption of correctness, as to the Trial Court's factual determination, unless the evidence preponderates otherwise. Rule 13(d), T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The Trial Court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

After the case was remanded by this Court for further consideration, the plaintiff filed a motion for the Trial Judge to recuse, arguing that under the provisions of Rule 59.06 T.R.C.P. where a new trial has been granted because the verdict is contrary to the weight of the evidence, the plaintiff is entitled that the new trial be conducted by a different Judge, if requested. Also, plaintiff averred, Goines' mother, Frances Johnson is employed by the Meigs County Chancery Court Clerk and Master's Office where the Honorable Russell E. Simmons is a regular Circuit Judge in that district. Judge Simmons denied the motion.

Litigants are entitled to the "cold neutrality of an impartial court." *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967), and whether recusal is warranted must in the first instance be made by the judge himself. Unless the grounds for recusal fall within those enumerated in Tenn. Const. art. 6, § 11 or T.C.A. § 17-2-101 (1994), the Trial Judge's refusal to recuse is reviewed as an abuse of discretion. *State v. Raspberry*, 875 S.W.2d 678, 681 (Tenn. Crim. App. 1993). In making a decision, a judge must be objective and ask what a reasonable, disinterested person knowing all the relevant facts would think about the judge's impartiality. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998).

The Trial Judge did not abuse his discretion in declining to recuse himself. The Plaintiff's reliance on Tennessee Rule of Civil Procedure 59.06 as grounds for recusal is misplaced. This Rule provides for a new trial where a jury verdict is against the weight of the evidence, and is therefore inapplicable to the case at bar. As for the fact that the mother of one of the defendant's was employed at the Clerk and Master's office in Meigs County, the Trial Judge found that this did not rise to the level of a relationship that would require recusal. Plaintiff did not state in her motion that she intended to call Ms. Johnson as a witness, and there was no evidence offered that the Trial Judge knew Ms. Johnson. Moreover, Johnson is employed in the office of the Chancery Court for Meigs County while Judge Simmons is a circuit court judge with his primary office in Roane County.

Plaintiff's claims against Goines and Weir were dismissed. In reviewing this action, we must take the strongest legitimate view of the action in favor of the plaintiff, and allow all reasonable inferences in plaintiff's favor and discard all countervailing evidence. The Motion may only be granted if there is no material evidence in the record that would support a decision for the plaintiff. See *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977).

At trial, plaintiff attempted to prove a civil conspiracy, which is a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful but by unlawful means. *Kirksey v. Overton Pub, Inc.*, 739 S.W.2d 230, 236-237 (Tenn. Ct. App. 1987).

Under Tennessee law, there are seven elements to an action for inducement to breach a contract, both at common law and under T.C.A. § 47-50-109. These elements are also necessary to establish a cause of action for conspiracy to breach a contract. The plaintiff must prove that there was a legal contract, that the wrongdoer had sufficient knowledge of the contract, and she intended to induce its breach. Further, that the wrongdoer acted maliciously, and the contract was, in fact, breached, and the alleged act was the proximate cause of the breach, and damages resulted from that breach. *TSC Industries, Inc., v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987).

The Trial Judge in his ruling spoke of a preponderance, as opposed to material evidence, but his result is correct. After a careful review of the record, it is clear that all of the elements needed to establish inducement of a breach of contract or conspiracy to induce a breach were not established. Plaintiff only offered evidence as to four of these elements. No evidence was offered that Goines and/or Weir intended that Moates breach her contract, or that they in any way acted maliciously, or that their actions caused the breach. The evidence is that Moates contacted Goines about available space at the Vogue Salon. The Trial Court correctly pointed out that there was no evidence that the prior social contacts of Moates and Goines ever involved discussions concerning Moates renting space at Vogue Salon, "nor was there any evidence that the defendants [Goines] Johnson and [Weir] were aware of the circumstances of the termination when the Moates started work at their place of business."

These claims were properly dismissed, as there was no material evidence of all the elements required to maintain the action.

Baker insists that the Trial Court erred in modifying the language of the covenant not to compete by reducing the time limitation, and defendants argue that the contract is unenforceable, since it is in restraint of trade.

Covenants not to compete, because they are in restraint of trade, are disfavored in Tennessee. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). As such, they are construed strictly in favor of the employee. However, when the restrictions are reasonable under some circumstances, these covenants are enforceable. *Id.* The factors that are relevant in determining whether a covenant not to compete is reasonable include "the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest." *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966).

-4-

This Court, on the prior appeal, found that plaintiff had established a protectable interest, and that has become the law of the case. This does not end the inquiry, because on remand, the precise issue was to determine whether the non-competition clause was reasonable.

In *Allright Auto Parks*, our Supreme Court held that "the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer." 409 S.W.2d at 363. However, while numerous cases could be cited where covenants have been declared unreasonable because of their excessive territorial limits; these provide little direction since the question of reasonableness must be decided on an ad hoc basis. *Id.* "As is stated by Professor Williston in his learned treatise on contracts, the ultimate question in each case should be 'what is necessary for the protection of the promisee's rights and is not injurious to the public.' *Id.* at 364 (quoting Williston on Contracts, Vol. 5, s 1643, pp. 4606, 4608).

It is not disputed that these defendants violated the third provision of their employment contract, i.e., working as a nail technician in another salon or store within six months of the termination date in McMinn County. The defendants testified there were not enough employment opportunities outside McMinn County, necessitating their subsequent employment within that County. Ellison testified she looked into employment in Decatur in Meigs County as well as other places outside the county, and Moates testified that she did not look for work in Monroe County or Meigs County because "there is not enough business" and because her home was in McMinn County.

Plaintiff offered evidence of a former cosmetologist in Decatur, Meigs County, Tennessee, and a sales representative for State Beauty Supply. In the latter position, McKeehan traveled throughout the region, visiting many salons in Meigs and Monroe Counties. She testified there were 10 to 15 beauty salons in Decatur, but not that offered nail services, and there were 15 salons (that she visited) in Monroe County, including Sweetwater and Madisonville, with only 2 or 3 offering nail services. She further testified that when she was working in Decatur as a hair stylist, the salon received many calls regarding nail services but there was no nail technician at the salon or elsewhere in Decatur.

The Trial Court accepted this evidence, and found the territorial restriction to be reasonable. With respect to the period of restriction, the Trial Court found that six months was unreasonable and unduly burdensome on the nail technicians. He held that nail care is a high maintenance pursuit because people generally had appointments twice a month to maintain their nails, two months would be a sufficient time restriction to protect the plaintiff's business, and concluded that the time period was an undue economic hardship on defendants. If the scope of the covenant is unnecessarily burdensome to the employee, the courts will enforce the covenant only "to the extent that [it is] reasonably necessary to protect the employer's interest 'without imposing undue hardship on the employee when the public interest is not adversely affected.'" *Vantage Technology, L.L.C. v. Cross,* 17 S.W.3d at 647 (quoting *Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28, 37 (Tenn. 1984)).

We hold the Court acted within its discretion in modifying the non-compete clause of the contracts, rendering them reasonable and enforceable to the extent modified.

Finally, Baker appeals the Trial Court's finding on damages. In assessing damages, the Trial Court used as the measure of damages the loss of profits which resulted from the breach of the non-compete clause, which was proper. *See Powell v. McDonnell Ins., Inc.*, 1997 WL 589232 (Tenn. Ct. App. 1997); *Daws v. Lunsford*, 1990 WL 42979 (Tenn. Ct. App. April 16, 1990). *Also see generally,* 25 C.J.S. Damages § 79(d) (1966).

Lost or expected profits are recoverable as damages if they are shown to be a consequence of the breach, provided the amount can be proved with reasonable certainty. *See Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Co.*, 298 S.W.2d 788 (Tenn. Ct. App. 1956).

Baker offered as proof of damages her 1996 and 1997 tax documents showing gross profit for her business during those two years. The Schedule C's introduced reflected a profit or loss from business, for each of the two years. The portions of the forms relating to business expenses were not included in the proffered exhibits.

The Trial Court observed in regard to these tax documents:

> Not only did the plaintiff offer only the figures for gross receipts or sales, but purposely on the exhibits cut off the remainder of the tax return and profit and loss statement to deny the trier of fact the information of net profits for the years of 1996 and 1997. The conclusion that the Court draws from this is that the evidence of the net profit or loss of the business from 1996 to 1997 would have been adverse to the plaintiff's position.

An omission by a party to produce evidence in elucidation of the subject-matter in dispute which is within his capabilities and peculiarly within his own knowledge, "frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice." *Doughty v. Grills*, 260 S.W.2d 379, 391 (Tenn. Ct. App. 1952).

In the six months prior to their termination of employment at Patty's Pampered Nails, Defendants Moates and Ellison received commissions in the amount of $7,244.50 and $6,483.55 respectively. The employment contracts provided that they were to receive 50% of the first $600.00 of gross revenues and then 70% of anything greater than $600.00. The Trial Judge dismissed these figures as irrelevant because the contracts did not indicate if the first $600.00 was an annual or monthly amount, and the amounts received by the defendants were not the same as those kept by the business.

Nevertheless, there are problems with using the commission amounts as a measure of damages. Plaintiff's theory of damages is that when Moates and Ellison left and began work

elsewhere in the county, they contacted clients from her business, resulting in a loss of clientele. Plaintiff offered evidence that 52 clients, previously serviced by defendants, did not return after defendants left, but she could not say definitely that all of these went on to be serviced by Moates or Ellison.

Finally, the Trial Court found that Baker failed to mitigate her damages, if she, in fact, had any. Baker testified that she was fully booked and only had one other nail technician helping her after Moates and Ellison left, and would not have been able to service all the clients that left if they had remained. Baker did not hire anyone when defendants left, for at least three months.

We conclude, as did the Trial Judge, that any damages suffered by Baker were not proven to any reasonable degree, and we affirm that nominal damages were appropriate. *See Morristown.*

Accordingly, we affirm the judgment of the Trial Court and remand with cost of the appeal assessed to Patricia K. Baker.

_____
HERSCHEL PICKENS FRANKS, J.