# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 4, 2002

## PRECISION ELECTRIC COMPANY, INC. v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission, Eastern Division**
**No. 400657      Mattielyn B. Williams, Administrative Law Judge**

### FILED FEBRUARY 21, 2003

### No. E2002-01340-COA-R3-CV

This litigation arises out of an accident involving a truck owned by Precision Electric Company, Inc. ("the Claimant") and a vehicle owned by the State of Tennessee ("the State"). The Claimant filed a claim against the State with the Tennessee Claims Commission, seeking compensatory damages of $19,845 for, *inter alia*, the diminution in value of the Claimant's vehicle and a loss of net profits. The case was tried before an Administrative Law Judge ("the ALJ")[1]. The ALJ awarded the Claimant $2,217 for a wrecker bill and certain interest charges, but declined to award the remaining elements of damages sought, finding that the Claimant had failed to carry its burden of proof with respect to these latter damages. On appeal, the Claimant argues that the ALJ erred in refusing to award the full amount of damages sought by it. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims Commission Affirmed; Case Remanded**

---

[1]This action was assigned to an Administrative Law Judge pursuant to Tenn. Code Ann. § 9-8-309 (1999), which provides, in pertinent part, as follows:

> Upon the request . . . of an individual claims commissioner as to claims within that commissioner's grand division, . . . the secretary of state may assign administrative law judges from the administrative procedures division of the secretary of state's office to assist in the removal of unacceptable congestion or delay on the claims commission docket. Upon such assignment, administrative law judges shall have all the powers, duties and immunities as a regularly appointed claims commissioner. . . .

The Claimant has appealed the decision of the ALJ pursuant to Tenn. Code Ann. § 9-8-403(a)(1) (Supp. 2002), which provides, in pertinent part, as follows:

> The decisions of the individual commissioners . . . may be appealed to the Tennessee court of appeals pursuant to the same rules of appellate procedure which govern interlocutory appeals and appeals from final judgments in trial court civil actions . . . .

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Terrill L. Adkins, Knoxville, Tennessee, for the appellant, Precision Electric Company, Inc.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Sarah T. Chambers, Assistant Attorney General, for the State of Tennessee.

**OPINION**

I.

On May 27, 1994, Earl Henderson, an employee of the Claimant, was serving as a key man supervisor at the construction site of an electrical subcontract. While en route to the site, Henderson, who was driving a 1986 pick-up truck ("the Truck") owned by the Claimant, was involved in an accident with a vehicle owned by the State and operated by a State employee. The State admitted liability for the accident.

Subsequently, the Claimant filed this action against the State, arguing that the Claimant had suffered "a loss in the form of a diminution of the market value of [the Truck]" and "a loss of business income as a result of the accident and the destruction of [the Truck]." The ALJ conducted a bench trial on the issue of damages.

The only witness to testify at trial was John Henry Jones, Jr., the president and sole stockholder of the Claimant. Jones testified that the diminution in value of the Truck as a result of the accident was $10,378. Because the Claimant lost the use of the Truck following the accident, it was forced to rent a replacement vehicle for twenty days at a cost of $50 per day, totaling $1,000. Furthermore, Jones testified that the injuries sustained by Henderson in the accident necessitated a shift of employees from one job site to another, which resulted in a loss of profits in the amount of $6,250. Finally, Jones submitted proof of a $125 wrecker bill, and testified that the Claimant lost $2,092 in "interest on worker's compensation premiums" as a result of Henderson's injuries.[2] The total amount of damages sought by the Claimant was $19,845.

At the conclusion of the trial, the ALJ took the case under advisement. She later issued her Findings of Fact and Conclusions of Law, in which she determined that Jones' testimony, while credible, was insufficient to prove the diminution in value of the Truck, the cost of the rental vehicle, and the lost profits. However, the ALJ stated in her Findings of Fact that Jones submitted a copy of the $125 wrecker bill, and she further noted that the State "agreed that the [$2,092] figure was correct" and "did not contest the availability of recovery of such interest." Accordingly, the ALJ awarded the Claimant both amounts, totaling $2,217.

---

[2]The exact nature of this loss is not clear; however, since the State agreed that the Claimant was entitled to recover this amount, we will not consider it further.

From this decision, the Claimant appeals.

## II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); ***Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995); ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996); ***Presley v. Bennett***, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is also subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991).

## III.

## A.

In the Claimant's first issue, it argues that the ALJ erred in refusing to award compensatory damages of $10,378, which amount allegedly represented the diminution in market value of the Truck.[3] Jones testified at trial that he had purchased the Truck in 1992 for $11,000 and that he subsequently made improvements to the Truck that totaled $4,600. These improvements included a $2,200 utility bed, a $1,600 motor and an $1,800 paint job. The ALJ made the following Findings of Fact with respect to Jones' testimony on the diminution in value of the Truck:

> Jones testified that, in his opinion as owner, the fair market value of the [Truck], prior to the accident, was [$10,978], and after the accident, [$600]. Jones testified as to certain improvements to the [Truck], such as painting it, adding a utility bed, and installing another motor, raising the worth of the [Truck]. It is noted that Jones, in his deposition, indicated that [$1,000], not [$600] was received as salvage value.

---

[3]In the argument section of the Claimant's brief addressing the issue of the value of the Truck, the Claimant contends that the ALJ erred when she received into evidence a letter from Jones to the State, with an accompanying appraisal of the Truck. This issue is not included within the Claimant's Statement of the Issues, as required by Tenn. R. App. P. 27(a)(4). Under our appellate procedure, this court's review, generally speaking, "will extend only to those issues presented for review." Tenn. R. App. P. 13(b). Since the Claimant did not include this matter in its listing of the issues for our consideration, we will not discuss it in detail. Suffice it to say that assuming, without deciding, the ALJ erred in considering the letter and the appraisal, we hold that any such error does not constitute a basis for reversal. *See* Tenn. R. App. P. 36(b).

-3-

Jones admitted that the purchase price, from two (2) years prior to the accident, was the starting point for his analysis of value. Jones did not testify as to any figure for depreciation, rather Jones testified that the improvements made, on/to the [Truck], justified use of the purchase price in his assessment. Jones did not submit a pre-accident or post-accident appraisal, NADA or NAPA figures, motor vehicle valuation reports, on the [Truck].

Claimant seeks [$2,200] for the utility bed improvement[.] However, on cross-examination, Jones admitted that he actually retained the utility bed from the [Truck].

Jones did not submit a receipt on the painting.

With regard to replacement of the motor, it was noted that Jones submitted two (2) receipts, dated January 1992 and October 1993. Jones admitted that Claimant Precision owns a number of trucks. On cross-examination, Jones admitted that it was possible that the motor replacement receipts submitted involved repairs on other Precision vehicles. It was also noted that the date of the vehicle repaired (1985 v. 1986), on one of the receipts, may have been altered, or perhaps a typographical error was made and an effort to correct it, on the receipt.

Jones submitted other repair receipts, but after inquiry, those receipts appeared to relate to routine maintenance (ex. oil changes) of a number of vehicles, rather than being improvements on the [Truck], exclusively, or repairs made, specifically, as a result of the accident.

(Numbering in original omitted). The ALJ further noted that Jones "did not call a motor vehicle value analyst" as a witness.

In her Conclusions of Law, the ALJ stated that Jones could "give his lay opinion, based on his personal knowledge and perception as owner, as to the value of the [Truck]" pursuant to Tenn. R. Evid. 701(b).[4] However, she concluded as follows:

In this particular matter, given the absence of key receipts, valuations, and the like, not to mention inconsistencies in testimony (for

---

[4]Tenn. R. Evid. 701(b) provides as follows:

A witness may testify to the value of the witness's own property or services.

The State does not challenge the right of Jones to testify as to the value of corporate property.

example: salvage of [$600] versus [$1,000]), it is CONCLUDED that Jones' lay opinion testimony, standing alone, is not sufficient to prove the amount of damages to the [Truck], by a preponderance.

In its attempt to persuade this court that the ALJ erred in refusing to award diminution in value damages, the Claimant relies on Tenn. R. Evid. 602[5] for the proposition that Jones could testify as to the value of the Truck if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." We construe the Claimant's argument to be that, as Jones had first hand knowledge of the value of and improvements to the Truck, any further proof of said value and improvements was unnecessary under Tenn. R. Evid. 602. Claimant has misconstrued the import of Rule 602. While the purpose of the rule is to prevent a witness from testifying as to a matter of which he or she has no personal knowledge, the rule is not meant to be a bar to all other types of proof on the matter. As Jones submitted into evidence a bill from the wrecker service in the amount of $125, he was undoubtedly aware that such a bill might assist in proving his claim of that amount. Otherwise, he would have merely testified as to the amount of the wrecker bill, without providing any supporting documentation. We hold that the Claimant's argument as set forth above is legally flawed.

The Claimant further contends that the ALJ's conclusion that "Jones' testimony overall is CREDIBLE, in that the undersigned does not believe the witness was knowingly stating falsehoods," sufficiently demonstrates the error of the ALJ in denying an award for diminution in value. However, the ALJ's finding that the witness was not "knowingly stating falsehoods" does not mean, in this case, that there is proof sufficient to satisfy the preponderance of the evidence standard. "When the trial judge has seen and heard a witness's testimony, considerable deference must be accorded on review to the trial court's findings of credibility *and the weight to be accorded to that testimony*." ***Cutler-Hammer v. Crabtree***, 54 S.W.3d 748, 753 (Tenn. 2001) (emphasis added). While the ALJ in the instant case found Jones' testimony to be credible, she clearly did not find the weight of the testimony sufficient to prove the Claimant's case. In addition, the ALJ stated as follows:

It is CONCLUDED that it is not that unusual for an owner, who has personal experience with a vehicle, and perhaps sentimental attachment, to evaluate the value of that vehicle at a higher dollar amount than a neutral, experienced, trained professional would evaluate a given vehicle.

---

[5]Tenn. R. Evid. 602 provides, in pertinent part, as follows:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony. . . .

-5-

As we must accord great deference to the ALJ's findings, we hold that the evidence does not preponderate against the trial court's determination that the Claimant failed to carry its burden of proof as to the diminution in value issue.

B.

The Claimant next contends that the ALJ erred in refusing to award the requested $1,000 in rental expenses. At trial, Jones testified that it took the Claimant 20 days to locate a vehicle to replace the damaged Truck and that during that 20 days, the Claimant was forced to rent a replacement truck at a cost of $50 per day. Jones stated that the total rental expense amounted to $1,000. However, the ALJ found that "Jones did not submit a copy of the rental vehicle receipt and did not recall the name of the company that provided the rental vehicle." In her Conclusions of Law, the ALJ commented on this lack of evidence as follows:

> It is unclear, with several years passing between the accident and the hearing, why Jones did not retain a copy of the rental truck bill and carefully segregate the receipts for improvements on the [Truck], from expenses associated with the remainder of [the Claimant's] fleet. Even if the rental and improvement receipts were mislaid, it is hard to understand why, through review of tax returns or through other sources, [the Claimant] did not identify the firms that provided those services and obtain duplicate receipts.

Based upon this lack of evidence, the ALJ concluded that the Claimant had failed to prove by a preponderance of the evidence that it was entitled to the requested $1,000 in rental expenses.

We cannot say that the evidence preponderates against the ALJ's findings. As this court has held, damages that are speculative in nature will be prohibited when their very existence is uncertain. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). Furthermore, "[a]n omission by a party to produce evidence in elucidation of the subject-matter in dispute which is within his capabilities and peculiarly within his own knowledge, 'frequently affords occasion for presumptions against him, since it raises strong suspicion that such evidence, if adduced, would operate to his prejudice.'" *Baker v. Hooper*, 50 S.W.3d 463, 470 (Tenn. Ct. App. 2001) (quoting *Doughty v. Grills*, 37 Tenn. App. 63, 91, 260 S.W.2d 379, 391 (1952)). Citing *Baker* and pointing to the lack of concrete evidence, the ALJ concluded that "the proof in this matter could only be evaluated to constitute failure of Claimant to meet its burden, on most components of damages." We find no error in the ALJ's refusal to award the requested rental expenses.

C.

Finally, the Claimant argues that the ALJ erred in denying the Claimant's request for lost profits. Jones testified that, at the time of the accident, Henderson was supervising two other employees on the electrical subcontract construction site and that the construction project was

approximately 88% completed. As Henderson was unable to return to work immediately after the accident and as the Claimant had approximately 30 days to complete construction, Jones testified that the Claimant was forced to take two skilled employees from other jobs and reassign them to Herderson's project. This reassignment of workers, Jones stated, resulted in a loss of net profit due to an increase in expenses associated with the payroll. Jones calculated the loss at $500 per day for twelve and one-half working days, for a total loss of net profits of $6,250.

The ALJ included the following observations in her Findings of Fact:

> Claimant did not submit payroll records, accounting statements, or other documents to supplement its testimony as to lost profits.

> Jones candidly admitted that [the Claimant] received the full contract price for the other construction projects, from which he temporarily shifted employees, in order to complete the [electrical subcontract construction] project on time.

> Claimant did not call a . . . financial expert, or construction company profit and loss analyst as a witness.

(Numbering in original omitted). Based upon these observations, the ALJ concluded as follows:

> The State, on the one hand, contends that the "lost profit" to which Jones testified, is actually "lost anticipated profit" and not recoverable, since [the Claimant] received the full contract price for the [electrical subcontract] construction contract, as well as received the full contract price on the construction contracts from which staff was shifted, in order to complete the [electrical subcontract] contract on time. Claimant contends that "anticipated lost profit" is recoverable and relies on Tennessee Pattern Jury Instruction Civil 14.18 ("If the services were replaceable, the measure of damages would be the cost of hiring a substitute."), as authority.

> On the other hand, the State concurred that "lost profits" can be awarded, under Tennessee law. The State continues, however, that recovery of "lost profit[s]" should only lie when "they can be proved with reasonable certainty[,] and are not[] in fact[] remote or speculative." *Keller v. West-Morr Investors, Ltd.*, 770 S.W.2d 543, 55[1] (Tenn. Ct. App. 198[8]). Review of the transcript indicates that Jones['] testimony, for example, as to number of days for which profit was lost, showed inconsistencies/memory lapses as to lost profits.

In this case, it is undisputed that a substitute was not hired. In this case, Claimant failed to provide payroll records or other accounting documents to show that the specific "cost" of shifting workers, to show how his "costs" in shifting existing workers mathematically relates to the cost of hiring a substitute, or to present compelling legal authority to suggest a more general measure of damages applies. Treating Claimant's "loss" arguendo as "lost profits", it is CONCLUDED that Claimant's proof of "lost profits" was insufficient.

(Numbering in original omitted).

Again, we find no error in the ALJ's findings. The ALJ apparently viewed Jones' testimony as to lost profits to be "remote or speculative," *see Keller*, 770 S.W.2d at 555, and viewed his failure to produce payroll records and other documents that were "within his capabilities" with suspicion, *see Baker*, 50 S.W.3d at 470. We hold that the evidence does not preponderate against the ALJ's finding that the Claimant failed to carry its burden of proof as to the alleged lost profits.

IV.

The judgment of the Claims Commission is affirmed. This case is remanded for the collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Precision Electric Company, Inc.

_____
CHARLES D. SUSANO, JR., JUDGE