IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2009 Session

**THUY-T- LAM D/B/A NAIL PARADISE**
**v.**
**TUAN NGOC BUI LE A/K/A DAVID LE**

**Appeal from the Circuit Court of Cocke County**
**No. 30,136 O. Duane Sloan, Judge**

_____

**No. E2008-02491-COA-R3-CV - Filed July 15, 2009**

_____

The appellant-defendant appeals the trial court's denial of his Motion for Summary Judgment and the modification and enforcement of his non-competition agreement with appellee-plaintiff. We affirm the trial court's denial of appellant-defendant's motion for summary judgment; we affirm the trial court's ruling modifying the territorial restrictions in the non-compete agreement; we further modify the terms of the non-competition agreement in order to be consistent with Tennessee's public policy; and we reverse the trial court's institution of a permanent injunction against the appellant-defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Modified in Part, Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P. J. and CHARLES D. SUSANO, JR., J. joined.

Fletcher L. Ervin, Newport, Tennessee, for the Appellant, Tuan Ngoc Bui Le a/k/a David Le.

S. Joanne Sheldon, Newport, Tennessee, for the Appellee, Thuy-T-Lam d/b/a Nail Paradise.

# OPINION

## I.

### Factual Background:

On January 8, 2001, appellee-plaintiff Thuy- T- Lam ("Ms. Lam") entered into a contract to purchase a nail salon called "Nail Paradise" from the appellant-defendant David Le ("Mr. Le") for $32,000.00. The contract provided as follows:

> [Mr. Le will] agree to sell the entire ownership of Nail Paradise [to Ms. Lam for] the price of $32,000.00 . . . According to the agreement between me [Mr. Le] seller to [Ms. Lam] buyer after the ownership. . . Nail Paradise will be entire[ly] run by [Ms. Lam], and I [Mr. Le] will agree to stay to work for her [Ms. Lam] in Nail Paradise as long as she need[s] me. Under the agreement,. . . I cannot work or open any nail shop in this Cocke County or any county near by as long as the Nail Paradise [is] still in business. If any of this agreement [is] broken there would be a lawsuit against [Mr. Le].

Mr. Le continued to work for Ms. Lam for over four more years. He left Nail Paradise in 2005 and began working at the Beauty Center, also located in Cocke County.

On May 12, 2006, Ms. Lam filed a Complaint in the Circuit Court of Cocke County asking that Mr. Le be found in breach of contract and held responsible for various damages arising from the breach.[1] A request for a hearing on a temporary restraining order was also made but never scheduled. Although Mr. Le responded to the trial court that he had received the Complaint and was looking for an attorney, he failed to file an Answer. As a result of the omission, Ms. Lam filed a Motion for Default Judgment, which was awarded on November 13, 2006. On January 9, 2007, Mr. Le filed a Motion to Set Aside Default Judgment under Rule 60, T.R.C.P. and Answer. The default was subsequently set aside by the Court on June 18, 2007.[2]

After filing his Answer, Mr. Le moved for Summary Judgment on September 13, 2007, alleging that the terms of the non-compete agreement were unreasonable as to both time and territory and should therefore be stricken from the contract. On the same day, an Amended Motion for Summary Judgment was filed in which Mr Le argued that Ms. Lam waived the non-compete

---

[1]These damages included a return of all money paid to Mr. Le for the purchase of Nail Paradise and lost profits.

[2] The setting aside of the Default Judgment is not at issue in this appeal.

2

agreement by continuing to employ him for over four years after the contract was consummated. The trial court did not rule on the Motion for Summary Judgment before trial.

*Trial Proceedings*

The trial was held on April 15, 2008, at which time the trial judge announced that, based on the previously filed Motion for Summary Judgment, he was modifying the non-compete agreement's territory from "Cocke County and any county nearby" to "Cocke County and any adjoining county." The trial court then allowed proof regarding the reasonableness of the time restriction.

Ms. Lam took the stand and testified that Mr. Le quit after having an argument with a co-worker. She further testified that after he left, Mr. Le began to undercut her prices by $5.00 on a full set of nails and by $3.00 for "fill ins." She explained that Mr. Le's departure caused her business to go from "busy" to "slow." Specifically, she claimed that her business volume went from an average of 25 nail procedures a day down to 15, and that business was down even during the traditionally busy "prom season." When Ms. Lam's counsel began to introduce the Nail Paradise's appointment books into evidence and Ms. Lam sought to explain the contents of the books, the trial judge interrupted the examination. He ruled that the time restriction was reasonable since, contrary to Mr. Le's assertions, it was not necessarily for an indefinite period. Rather, he found it was for only as long as Nail Paradise stayed in business, which is a limited period of time. As a result of this finding, the trial judge decided there was no need to hear any more proof as to the reasonableness of the time restriction.

At that point, Ms. Lam was still on the stand. She explained to the court that she only sought enforcement of the non-compete clause and waived her claim for damages. Upon hearing that Ms. Lam had no interest in money damages other than court costs, the trial judge told her to step down. He then asked Ms. Lam, *sua sponte*, whether she wanted to change her request for a temporary injunction into a permanent injunction; she responded affirmatively.

Mr. Le's counsel objected to the permanent injunction, contending that Ms. Lam was not entitled to such extraordinary relief since she had previously only requested a temporary injunction. Mr. Le's counsel further objected that he did not have an opportunity to cross-examine Ms. Lam. Despite these objections, the trial judge concluded that the modified non-compete clause was reasonable and enforceable.

At the conclusion of the trial, the trial court made the following findings of fact:

1. The parties stipulated that there was a binding contract between [Ms. Lam] and [Mr. Le].

2. That the contract is clear in meaning and that the non-compete areas are as follows: Cocke County, Greene County, Jefferson County, Sevier County, and

Hamblen County.

3. That the Court finds that the non-compete time period is specific and definite wherein [Mr. Le] shall not perform any nail services in any salon in the aforementioned non-compete areas so long as Nail Paradise is in business.

4. That pursuant to the terms of the contract entered between [Ms. Lam] and [Mr. Le] [Mr. Le] is immediately restrained and/or enjoined from performing any nail services in any nail salon in the non-compete area so long as Nail Paradise is still in business.

5. That [Ms. Lam] waived the issue of damages in this matter.

6. That [Mr. Le] is responsible for all court costs in this matter.

Based upon these findings of fact, the court *inter alia* held as follows:

A. That pursuant to the terms of the contract entered between [Ms. Lam] and [Mr. Le] [Mr. Le] is immediately restrained and/or enjoined from performing any nail services in any nail salon in the non-compete area so long as Nail Paradise is in business.

B. That if [Mr. Le] performs any such nail services in any nail salon in the non-compete areas he will be subject to contempt of court.

C. That [Mr. Le] is responsible for the court costs in this matter.

*Post-Trial Proceedings*

Mr. Le filed a Motion to Alter or Amend the Judgment in which he reiterated that the territory was too broad and the time too indefinite for the non-compete clause to be enforceable. Ms. Lam filed a post-trial Motion for Contempt against Mr. Le for continuing to provide nail services within the non-compete area. The trial court denied the Motion to Alter or Amend and informed Mr. Le that he was to abide by the permanent injunction.

Mr. Le filed a timely appeal to this Court.

## II.

### Questions presented:

Although Mr. Le presents four issues in his brief for our review, we have condensed them into the following three:

I.      Did the trial court err in not granting Mr. Le's Motion for Summary Judgment to quash the non-compete provision?

II.     Did the trial court err by modifying the territory covered by the non-compete agreement and by refusing to modify the time restriction in the agreement?

III.    Did the trial court deny Mr. Le due process by enforcing a permanent injunction *sua sponte* and by restricting Mr. Le's cross-examination of Ms. Lam and presentation of evidence?

## III.

### Standard of Review:

Since the case was tried without a jury, the standard of review is *de novo* upon the record. Tenn. R. App. P. 13(d). This Court gives a presumption of correctness to the trial court's findings of fact and will disturb those findings only where the preponderance of the evidence is otherwise. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). However, the trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## IV.

### Arguments Presented and Analysis:

I.      *Did the trial court err by not granting Mr. Le his Motion for Summary Judgment to quash the non-compete provision?*

In his first issue Mr. Le argues that the trial court erred in failing to grant his motion for summary judgment. This is an issue that cannot be raised at this juncture in the proceedings. "A trial court's denial of a motion for summary judgment, predicted upon the existence of a genuine issue of material fact, is not reviewable on appeal when a judgment is subsequently rendered after a trial on the merits." *Bradford v. City of Clarksville*, 885 S.W. 2d 78, 80 (Tenn. Ct. App. 1994); see also *Cortez v. Alutech, Inc.*, 941 S.W. 2d 891, 892 (Tenn. Ct. App. 1996). Therefore, we decline to review the propriety of the trial court's order denying Mr. Le's motion. Hence, this issue is found adverse to Mr. Le.

II.     *Did the trial court err in modifying the territory covered by the non-compete agreement and in refusing to modify the time covered by the agreement?*

Non-compete agreements are disfavored in Tennessee because they restrain trade. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). Nevertheless, the courts will uphold such

agreements if such restrictions are reasonable. *Id.* In determining whether a non-compete agreement is reasonable, a court will inquire into the consideration supporting the agreement, the threatened danger to the employer in the absence of such an agreement, the economic hardship imposed on the employee by such a covenant, and whether such an agreement is inimical to the public interest. *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966). Furthermore, "the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer." *Id.* (citing *Matthews v. Barnes*, 293 S.W. 993 (Tenn. 1927); *Arkansas Dailies, Inc. v. Dan,* 260 S.W. 2d 200 (Tenn. Ct. App. 1953); *Federated Mut. Imp. & Hwe. Ins. Co. v. Anderson*, 351 S.W. 2d 411 (Tenn. Ct. App. 1961); 17 C.J.S. *Contracts* §§ 238-258). Finally, the question of territorial limits and temporal limits must be decided on a case-by-case basis. *Id.*

We are guided by this Court's previous decision in *Baker v. Hooper,* 50 S.W.3d 463, 466 (Tenn. Ct. App. 2001), in which this Court affirmed, *inter alia*, the trial court's modification of a non-competition agreement between a nail salon owner and her "nail technicians." As in the case at bar, the plaintiff nail salon owner was suing to enforce the non-compete agreement that her employees had signed.[3] *Id.* In that case, the applicable part of the non-compete agreement read as follows:

> Contractor is not to compete by opening another licensed nail salon in Contractors name or being the managing nail technician of a competitive nail salon in ***McMinn County*** for ***one (1) year*** subsequent to termination date from Patty's Pampered Nails, or working as a nail technician in another salon or store for ***six (6) months*** in ***McMinn County*** subsequent to termination date from Patty's Pampered Nails. *Id.* (emphasis added).

Since the employees who violated the agreement left to work as technicians, they were subject to the six-month restriction. *Id.* at 469. After hearing evidence from both sides, the trial court determined that the geographic restriction of McMinn County was reasonable. *Id.* However, the trial court reduced the time limitation from six months to two months since it determined that nail care is a high-maintenance pursuit; it reasoned that since people generally had appointments twice a month to maintain their nails, two months would be a sufficient time restriction to protect the plaintiff's business and that six months would present an undue economic hardship to defendants. *Id.* In affirming that the trial court had acted within its discretion, this Court noted that "the ultimate question in each case should be 'what is necessary for the protection of the promisee's rights and is not injurious to the public.'" *Id.* (internal citations omitted).

*The Territorial Restriction*

The territorial restriction of the non-compete clause states, *"I can not work or open any nail shop in. . . Cocke County or any county [nearby]...."* We agree with the trial court that the word

---

[3]Although the nail technicians were technically independent contractors and not employees, this distinction has no bearing on the present matter. *Baker*, 50 S.W.3d at 467 (noting that like employer-employee relationships, "Tennessee law allows non-compete covenants in independent contract relationships....")

"nearby" makes this territorial restriction unreasonably vague. We also support the trial court's modification of the restriction from "any County nearby" to "any adjoining County." The phrase "any County nearby" obviously contemplates a restricted territory greater than just Cocke County. By substituting "nearby" with "adjoining," the trial court ensured that the most restrictive reading of "nearby" would be used. Such an interpretation is consistent with the parties' original intent to have a restrictive territory greater than just Cocke county. At the same time, the interpretation comports with Tennessee's public policy goal of ensuring that the territorial limitation is no greater than is necessary to protect the business interest of the employer. Thus, we find that it was reasonable for the trial court to modify the territorial terms of the non-compete agreement from "nearby counties" to "adjoining counties."

*The Temporal Restriction*

The temporal restriction of the non-compete clause states, *"I can not work or open any nail shop...as long as the Nail Paradise [is] still in business."* The trial court determined that this provision was reasonable since the restriction was dependant on the continuation of Nail Paradise as a going concern. Thus, the provision had a limiting effect that would not allow the restriction to continue in perpetuity. We must disagree with this analysis, especially in light of our previous holding in *Baker.*

The time limitation of *"as long as the Nail Paradise [is] still in business"* is entirely too speculative. Nail Paradise may go out of business in a month, in a year, or perhaps in decades. In contrast, the law requires that the time limitation be tailored so that it is "no greater than is necessary to protect the business interests of the employer." While we are mindful that this Court has previously upheld the validity of non-compete clauses that have spanned multiple years, or even an unlimited time period,[4] we must decide each time and territory limitation on a case-by-case basis. See *Allright Auto Parts,* 409 S.W. 2d at 363.

Because of the requirement of a case-by-case analysis, we find that *Baker* is instructive, although not binding. Like the case at bar, *Baker* dealt with a non-compete for nail technicians. Yet, in that case, we upheld the trial court's finding that *six months* was an excessive restriction. Considering the superficial similarity of the facts, it would be completely inconsistent for us to now hold that a non-compete agreement that could span decades is reasonable.

At the same time, however, we realize that *Baker* has some significant differences from the case at bar. For instance, unlike Mr. Le who used to own Nail Paradise, none of the nail technicians in *Baker* were ever managers, much less owners. As a result, the trial court was never forced to make a determination regarding reasonableness of the non-compete's one year restriction concerning managers. Another major difference is that the trial court in *Baker* had a full evidentiary hearing regarding the economic realities of the nail business in McMinn County. It was this hearing that persuaded the trial judge that two months would be a sufficient time restriction given the high-

---

[4]*See Scott v. McReynolds*, 255 S.W.2d 401 (Tenn. Ct. App. 1952).

7

maintenance nature of nail care. Conversely, the testimony in the present case was deficient. Although Ms. Lam claimed that her business slowed after Mr. Le's departure, the trial court ended the examination before Ms. Lam could support her claims with her appointment books. Even more importantly, Mr. Le was not allowed to cross-examine her. Furthermore, there was no testimony concerning the difficulty of attracting and keeping clientele in Cocke County and the adjoining counties.

We must conclude that the current restriction - *"as long as the Nail Paradise [is] still in business"* - is unreasonably broad and in violation of Tennessee's public policy. We further hold that a three-year restriction on Mr. Le's activities in Cocke County and the adjoining counties should be more than enough to ensure that Nail Paradise is sufficiently protected from Mr. Le's competition. In reaching this conclusion, we have taken into account Mr. Le's status as a former owner of Nail Paradise, our previous holding in *Baker*, the differences between *Baker* and this case, and our belief that a restrictive period of more than three years would pose an economic hardship for Mr. Le.

*The Non-Compete Agreement's Effective Date*

Even though we have determined the proper time limitation for the non-compete agreement, our analysis does not end. We must also address when the non-compete clause went into effect. We hold that the non-compete agreement began to run as of the signing of the contract on January 8, 2001, and not as of Mr. Le's departure from Nail Paradise in 2005.

In *B&L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 678 (Tenn. Ct. App. 1995), this Court held that pursuant to the defendant's employment agreement, the three-year non-compete period began to run after the one-year term of employment stated in his contract, and not after his termination that occurred over a decade later. The pertinent part of defendant's contract stated:

> The term of Employee's employment hereunder commenced on the 8th day of ***July, 1982***, and shall continue thereafter for a period of ***one (1) year.***
>
> ***
>
> In consideration of this one year employment agreement, Employee hereby agrees that ***during the term of his employment*** by the Corporation and for a period of three (3) years after the termination of said employment, Employee will not be employed by or serve as a consultant...

*Id.* at 676 (emphasis added). The defendant continued to work for the corporation from 1982 until 1994, at which time he either quit or was fired.[5] *Id.* at 677. The plaintiff corporation contended that the three-year non-compete agreement began to run in 1994 upon the defendant's departure. *Id.* at 678. The defendant, on the other hand, countered that the three-year period began to run in 1983

---

[5]The record was unclear on this point.

after the end of his initial one-year term of employment. *Id.* This Court agreed with the defendant, finding that the phrase "during the term of his employment," logically referred to the one-year period that began on July 8, 1982. *Id.* We noted that the plaintiff corporation "could have clearly stated that the three-year covenant not to compete period began after [the defendant's] departure from the company regardless of when he stopped working there." *Id.* Furthermore, because non-competition agreements are construed in favor of the employee, the corporation was "faced with accepting the contract with its most evident meaning." *Id.* In short, *B&L Corp.* stands for the proposition that a non-compete agreement may run concurrently with the continued employment of an employee, subject to the specificity of the non-compete agreement.

We recognize that there is a difference in the interpretation of the contract in *B&L Corp.* and the contract at bar, in that the *B&L Corp.* contract contained an ambiguity as to when the non-compete became effective. The contract in this case, on the other hand, contains no ambiguity. Instead, it is totally silent as to when the non-compete began to run. The need for a clarifying provision is a consequence of Ms Lam's reliance on a non-compete provision that violates Tennessee's public policy -- "*as long as the Nail Paradise [is] still in business.*" We are required to construe the contract in favor of Mr. Le.[6] As a result, Ms. Lam is now "faced with accepting the contract with its most evident meaning." *Id* at 677.

Without a specific provision to the contrary, we must conclude that the non-compete agreement began to run upon the signing of the contract on January 8, 2001. As a result, the non-compete agreement ran concurrently with Mr. Le's continued, post-sale employment with Ms. Lam. Therefore, based on our three-year modification, we hold that the non-compete agreement terminated on January 8, 2004, and that Mr. Le is now free to provide nail services in Cocke County and the adjoining counties.

III.     *Did the trial court deny Mr. Le due process by enforcing a permanent injunction sua sponte and by restricting Mr. Le's cross-examination of Ms. Lam and presentation of evidence?*

Mr. Le argues that his right to due process was violated since he was prevented from cross-examining Ms. Lam or presenting evidence. As a result of our finding that the modified non-compete agreement ended in 2004, Mr. Le's due due process argument has become moot. Thus, there is no need for this Court to make a further inquiry into the matter. Additionally, the permanent injunction against Mr. Le is quashed pursuant to our above findings.

# V.

## Conclusion:

---

[6]It is well settled that non-compete agreements are to be strictly construed in favor of the employee. While it is true that Mr. Le did not technically sign the contract as an employee, he nevertheless is the party who is restricted by the non-compete covenant. Thus, he should also receive the benefit of strict construction of the contract.

1. The trial court did not err in refusing to grant Mr. Le's Motion for Summary Judgment.
2. The trial court did not err in modifying the territorial restrictions contained in the non-compete agreement.
3. The trial court erred in finding that the time restriction contained in the non-compete agreement was reasonable.
4. The time restriction is modified to three years.
5. The non-compete agreement began to run upon the signing of the sales contract on January 8, 2001.
6. The non-compete period ended on January 8, 2004.
7. The permanent injunction issued by the trial court is quashed.
8. Mr. Le may now perform nail services in any nail shop in Cocke County and the adjoining counties without restriction.

Thus, the judgment of the trial court is affirmed in part, modified in part, and reversed in part. Costs on appeal are taxed equally to both parties. The case is remanded to the trial court for enforcement of the court's judgment and for collection of costs assessed below, pursuant to applicable law.

_____
JOHN W. McCLARTY, JUDGE