Earl I. HASTY, Plaintiff-Appellee,

v.

RENT–A–DRIVER, INC.,
Defendant-Appellant.

Supreme Court of Tennessee,
at Nashville.

May 29, 1984.
Petition to Rehear Denied June 25, 1984.

Fred C. Dance, Nashville, for defendant-appellant.

Robert L. Taylor, Nashville, for plaintiff-appellee.

OPINION

BROCK, Justice.

I

This is a contract action involving the validity in an employment contract of a covenant not to compete. After the em-

ployee brought suit against the employer, the employer counterclaimed alleging that the employee had breached a non-competition covenant. The employer did not request injunctive relief, but sought damages only. The Chancellor found that the covenant was void as an unreasonable restriction on trade, and dismissed the counterclaim. The Court of Appeals reversed, holding the covenant to be reasonable and awarding the employer damages for breach of contract. We granted the employee's application under Rule 11, Tenn.R.App.P., and now reverse.

Defendant Rent-A-Driver, Inc., is in the business of leasing the services of truck drivers to other businesses. In January, 1980, Rent-A-Driver employed the plaintiff as a truck driver. Before the plaintiff began working the parties entered into an employment contract, terminable at will by either party, containing the following provision:

"For and in consideration of employment by Rent-A-Driver, Inc. the undersigned employee hereby agrees that for a period of six (6) months from the date employee is last assigned for work by Rent-A-Driver, Inc. that employee will refrain from accepting or soliciting any employment of the type performed by Rent-A-Driver Inc. from any account to which employee has been assigned, from any leasing company, or from any account within a one hundred (100) miles radius from the offices of Rent-A-Driver, Inc. to which Rent-A-Driver, Inc. has in the past or is presently providing transportation labor."

At the time he began working for Rent-A-Driver, the plaintiff had fifteen to sixteen years' experience as a truck driver. Rent-A-Driver assigned him to its account with Aladdin Industries, Inc. He began work immediately without receiving any training at the expense of Rent-A-Driver.

The plaintiff worked on the Aladdin account during his entire tenure with Rent-A-Driver. In September, 1981, the plaintiff left Rent-A-Driver to work as a driver for Personnel Service Division, a competitor of Rent-A-Driver. Personnel Service Division also supplied drivers to Aladdin and apparently the plaintiff remained on the Aladdin account after changing employers.

Three to five weeks after the plaintiff left Rent-A-Driver, Aladdin, which had been using the services of three truck driver leasing firms, terminated its relationship with Rent-A-Driver and began to use Personnel Service Division exclusively. Aladdin made this change, however, for business reasons unrelated to the plaintiff. The trucking supervisor for Aladdin testified that no individual driver could take Aladdin's business from one leasing company by going to work for another leasing company. If an Aladdin driver switched to a company with which Aladdin had no relationship, the response of Aladdin would be that "[i]t's been nice knowing you."

## II

This Court most recently discussed the question of the validity of non-competition covenants in *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361 (1966). Such covenants are not favored in Tennessee because they are in restraint of trade. Further, we note that the modern trend is to construe covenants favorably to the employee. *Id.* at 290, 409 S.W.2d at 365. They are not, however, invalid *per se* and may be enforced, provided they are reasonable under the particular circumstances. *Id.* at 285, 409 S.W.2d at 363. In *Allright*, the Court discussed the factors relevant in determining reasonableness:

"There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned. Each case must stand or fall on its own facts. However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are: the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a

covenant; and whether or not such a covenant should be inimical to public interest." 409 S.W.2d at 363.

The dispute in this case centers on the second factor, threatened danger to the employer. More particularly, the issue is whether the employer has a legitimate business interest for the protection of which a restrictive covenant is reasonable.

■ Of course, any competition by a former employee may well injure the business of the employer. An employer, however, cannot by contract restrain ordinary competition. *All Stainless, Inc. v. Colby*, 364 Mass. 773, 308 N.E.2d 481, 486 (1974). In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. *See* 17 C.J.S. *Contracts* § 254 (1963). These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer. *See Matthews v. Barnes*, 155 Tenn. 110, 114, 293 S.W. 993, 994 (1927).

Although the numerous cases addressing the issue of the interests entitled to protection are not entirely reconcilable to each other, nevertheless certain interests have emerged as being entitled to the protection of a non-competition covenant. *See generally*, Annot., 43 A.L.R.2d 94 (1955). Such legitimate business interests include trade or business secrets or other confidential information. *See, e.g., Matthews v. Barnes, supra; All Stainless, Inc. v. Colby, supra.* Restrictive covenants have been held reasonable where the employee closely associates or has repeated contact with the employer's customers so that the customer tends to associate the employer's business with the employee. *See, e.g., Matthews v. Barnes, supra; Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 661 (Tex.App.1975). Covenants have also been held reasonable in order to prevent misuse of customer lists. *See, e.g., E.L. Conwell and Company v. Gutberlet*, 429 F.2d 527, 528 (4th Cir.1970).

There is authority for the proposition that general knowledge and skill appertain exclusively to the employee, even if acquired with expensive training, and thus does not constitute a protectible interest of the employer. *See, e.g., Hospital Consultants, Inc. v. Potyka, supra,* at 662; *Club Aluminum Co. v. Young*, 263 Mass. 223, 160 N.E. 804 (1928); Blake, *Employee Agreements Not To Compete*, 73 Harv.L. Rev. 625, 668 (1960).[1] Training in conjunction with other factors has, however, been cited as a factor in upholding the reasonableness of a covenant. *See, e.g., Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838, 846 (1957) (training received is specialized so that competition would be inequitable); *Vermont Electric Supply Company, Inc. v. Andrus*, 132 Vt. 195, 315 A.2d 456 (1974) (employee sent to school, made privy to cost factors in pricing and as a salesman developed a close relationship with employer's customers).

### III

■ The plaintiff in the instant case was privy to no trade or business secrets or confidential information. Though he had personal contact with Aladdin, a client of Rent-A-Driver, he had no influence on Aladdin's decision regarding its use of the services of Rent-A-Driver or of any other truck driver leasing firm. The plaintiff received no training, expensive or otherwise, from Rent-A-Driver. The record, in short, is bereft of any facts of the type ordinarily used to attempt to justify a non-competition clause.

The defendant asserts that the purpose of the covenant was to protect its work force. The proof showed that Rent-A-Driver employed 385 drivers. Out of 100 applicants it receives for positions as truck drivers, Rent-A-Driver hires ten. Approximately four man-hours per application are spent in this initial weeding out process. Of the drivers initially hired, Rent-A-Driver

---

1. *But see Barry v. Stanco Communications Products,* 243 Ga. 68, 252 S.E.2d 491 (1979) (unfair to allow employee to compete after employer spent large sums of money on training).

retains only three or four after a 90 day probationary period. In a recent three year period it lost approximately 75–100 drivers to its competitors. It is the defendant's position that the loss of its work force in the selection of which it had expended considerable time and money justifies the non-competition covenant.

We are not persuaded that Rent-A-Driver has shown a need for the covenant which can justify it in the face of the resulting restraint and hardship on the employee. According to Rent-A-Driver's own proof, it loses less than 9% of its drivers to its competitors annually. Standing alone the loss of employees to competitors is the type of injury which results from ordinary competition and which cannot be restrained by contract. It is true that Rent-A-Driver invested its resources in identifying and hiring those drivers which were highly qualified. The proper inquiry, however, is whether this expenditure of resources renders the plaintiff's subsequent competition unfair. The plaintiff was already a highly qualified driver when he came to Rent-A-Driver. Rent-A-Driver expended no resources in producing these qualifications. The plaintiff merely received from Rent-A-Driver the opportunity to practice his trade. Under these circumstances, we cannot characterize the plaintiff's subsequent competition with Rent-A-Driver as unfair.

The judgment of the Court of Appeals is reversed and that of the Chancellor dismissing the defendant's counterclaim is affirmed. Costs are taxed against the defendant.

FONES, HARBISON and DROWOTA, JJ., and HUMPHREYS, Special Justice, concur.