IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

BARRY W. BRASFIELD,             ) C/A NO. 03A01-9811-CH-00392

**FILED**

October 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

)
        Plaintiff/Counter-    )
        Defendant-Appellee,   )
)
)
)
)
v.                           ) APPEAL AS OF RIGHT FROM THE
                             ) SULLIVAN COUNTY CHANCERY
COURT
)
)
)
)
ANESTHESIA SERVICES, P.C.,    )
)
        Defendant/Counter-   )
        Plaintiff-Appellant.  ) HONORABLE RICHARD E. LADD,
                             ) CHANCELLOR

For Appellant

THOMAS C. JESSEE
Jessee & Jessee
Johnson City, Tennessee

For Appellee

EARL R. BOOZE
Herrin, Booze & Rambo
Johnson City, Tennessee

**O P I N I O N**

AFFIRMED AND REMANDED

Susano, J.

Dr. Barry W. Brasfield filed suit to recover damages for monies allegedly due him under the termination-of-employment provisions of his written agreement with his former employer, the defendant Anesthesia Services, P.C. ("Anesthesia"). Following a bench trial, the trial court awarded Brasfield damages totaling $123,357.52 plus prejudgment interest. It rejected Anesthesia's counterclaim for an alleged violation of the non-competition provisions of the parties' employment agreement. Anesthesia appeals, raising issues that present the following questions for our review:

1. Did the trial court err in refusing to enforce a covenant not to compete against a physician where the physician himself did not compete directly with his former employer but his new employer did?

2. Did the trial court err in denying Anesthesia's Motion to Alter or Amend the Judgment based on newly discovered evidence?

3. Did the trial court err in awarding Brasfield prejudgment interest?

I.   *Facts and Procedural History*

Brasfield is an anesthesiologist whose practice includes the sub-specialty of critical care. In January, 1991, he was hired by Anesthesia, a professional corporation consisting of a number of doctor

shareholders.  After working 18 months as a salaried employee, Brasfield

became a shareholder of Anesthesia under the terms of an employment

agreement signed by him on July 12, 1993.  Brasfield's employment agreement

provides that, upon termination, he is entitled to remuneration as follows:

> The Physician or his estate shall receive his
> accounts receivable at a rate not to exceed his regular
> salary as set forth in Article IV hereof for a period of
> twelve (12) months from the date of his termination.
> The purpose of this provision is to fairly compensate
> the Physician for his share of the accounts receivable
> he has put on the books of the corporation during his
> employment hereunder.

The agreement also contains a non-competition provision:

> Upon any termination of employment, Physician shall not thereafter
> practice medicine in any facility in which the Corporation is
> providing services or is negotiating to provide services at the time
> of his termination, for a period of two (2) years.

*     *     *

> If the Physician does not comply with [the above-quoted covenant not
> to compete], the Physician agrees to pay to the Corporation liquidated
> damages, within ninety (90) days of the commencement of employment
> within the restricted area, in the amount of $200,000.00.

In February, 1995, Anesthesia entered into an exclusive

agreement with Indian Path Hospital ("Indian Path") to provide

anesthesiology services at the hospital.  By May, 1996, Anesthesia's four

shareholders had determined that the Indian Path contract was not

sufficiently profitable.  The shareholders, including Brasfield,

unanimously agreed to exercise their option to cancel the contract and to

thereafter enter into negotiations with the hospital for a new contract.

On May 17, 1996, Anesthesia informed Indian Path of its decision.

According to the cancellation provisions of the contract, it was to terminate 90 days from the date of notice of cancellation, thus making Anesthesia's cancellation effective August 18, 1996.  Soon after Anesthesia gave Indian Path notice of cancellation, a competing group of anesthesiologists, Anesthesiology and Pain Consultants, P.C., ("the Competing Group"), learned that the Indian Path contract was available and initiated its own efforts to win the contract.

On July 1, 1996, Brasfield sent a letter of resignation to Anesthesia.  A few days later, Brasfield contacted the Competing Group to inquire whether its prior offer of employment -- one that he had previously rejected -- was still open.  It was.  On August 16, 1996, Anesthesia accepted Brasfield's resignation and agreed that his last day of employment would be August 18, 1996.

Brasfield began his employment with the Competing Group as a salaried employee around September 1, 1996.  Even though Anesthesia's contract with Indian Path had expired on August 18, 1996, Anesthesia continued to negotiate with and provide services to the hospital through the middle of October.  The Competing Group commenced the delivery of services at Indian Path sometime in mid-September and eventually won the exclusive contract.  Thus, subsequent to Brasfield's acceptance of employment with the Competing Group, both groups provided services to Indian Path for a short period of time.  However, Brasfield did not work at Indian Path after becoming an employee of the new group and did not participate in negotiations with Indian Path on behalf of the Competing Group.

Brasfield filed suit soon after Anesthesia informed him that it did not intend to pay him pursuant to the accounts receivable language of the employment agreement. Anesthesia took the position that any receivables due Brasfield would be offset by the $200,000 liquidated damages due Anesthesia for the former's alleged breach of the covenant not to compete.

The trial court found that the covenant not to compete was reasonable; but the court concluded that Brasfield had not breached it. Construing the covenant strictly, the court determined that it prohibited Brasfield from practicing at a facility where Anesthesia was performing services or negotiating to provide services. However, the court determined that the covenant did not extend to the practice of the other employees of the Competing Group. Because Brasfield had not practiced at Indian Path, the trial court reasoned that he had not violated the covenant not to compete.

Having determined that Brasfield was entitled to an award of his accounts receivable, the court reserved ruling on the amount of the award. The trial court indicated that it would refer the matter to a special master if the parties were unable to agree on the amount of the judgment within five days. The court also reserved ruling on Brasfield's request for prejudgment interest.

The parties did not reach an agreement within the five-day period specified by the trial court; however, before the matter could be referred to a special master, Anesthesia filed a Motion to Alter or Amend the Judgment. In the motion, Anesthesia claims newly discovered evidence

showing that Brasfield had provided the Competing Group with Anesthesia's records during the Indian Path negotiations and that Brasfield and one of his witnesses had testified falsely at trial regarding this matter.

The trial judge denied Anesthesia's motion, finding that the motion was not properly supported with factual material. The trial court also found that the motion was deficient in that it failed to demonstrate that the "new" evidence, even if properly before the court, was such that it could not have been ascertained with due diligence prior to trial.

At the final hearing, the parties agreed that the appropriate award of accounts receivable was $119,857,52. In addition, the court awarded Brasfield $3,500 for his stock in Anesthesia. Finally, the court awarded Brasfield prejudgment interest. Anesthesia appeals the accounts receivable award, the prejudgment interest award, and the refusal of the trial court to consider its newly discovered evidence.

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Rule 13(d), T.R.A.P.; *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993). Interpretation of a

contract, being a matter of law, is thus subject to *de novo* review with no presumption of correctness. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999); ***Campbell***, 919 S.W.2d at 35; ***Presley***, 860 S.W.2d at 859.

## III. *Analysis*

### A. Covenant Not to Compete

Anesthesia's first issue is whether the trial court erred in determining that Brasfield had not violated the non-competition provisions of the employment agreement. Brasfield does not challenge the validity of the covenant;[1] rather, he contends that he did not violate its terms.

The goal of contract interpretation is to ascertain the intent of the parties according to the usual, natural, and ordinary meaning of the words used by the parties. ***Guiliano,*** 995 S.W.2d at 95. In Tennessee, covenants not to compete are not favored "because they are in restraint of trade," *see* ***Hasty v. Rent-A-Driver, Inc.***, 671 S.W.2d 471, 472 (Tenn. 1984); for this reason, they are strictly construed in favor of the employee.

The covenant not to compete signed by Brasfield provides that

> upon any termination of employment, *Physician* shall not thereafter practice medicine in any facility in which the Corporation is providing services or is negotiating to provide services at the time of his termination.

(Emphasis added). We agree with the trial court that, when this contract

provision is construed in accordance with the ordinary meaning of its language and strictly in favor of the employee, the covenant merely prohibits Brasfield from personally practicing medicine in competition with Anesthesia.  To find in favor of Anesthesia, we would have to broaden the language of the contract to include a provision stipulating that a terminating employee is not permitted to join a group of doctors who practice at a facility of the type described in the contract.  We are without authority to add a new term to the parties' contract; on the contrary, our obligation is to enforce the parties' bargain as made by them.  Because Brasfield himself did not practice medicine at Indian Path, we hold that he did not violate the non-competition provisions of the employment agreement.

It may be true, as Anesthesia contends, that Brasfield, as a shareholder of that group and one with decision-making authority, possessed certain proprietary information that would have been useful to the Competing Group in its negotiations with Indian Path.  However, there is no evidence that Brasfield shared any such information with the Competing Group.  Hence, we can find no violation of the employment agreement in the simple fact that Brasfield terminated his employment with Anesthesia and joined the Competing Group at a time when the quantum of his knowledge included data proprietary to Anesthesia.  There is simply no proof that he used this information in a manner inconsistent with his employment relationship with Anesthesia.

For the foregoing reasons, we hold that the trial court did not err in its determination that Brasfield had not violated the non-competition covenant.

B. *Newly Discovered Evidence*

Anesthesia's second issue is whether the trial court erred in denying its motion to alter or amend the judgment based on newly discovered evidence.

Anesthesia states in its motion that after the trial court entered judgment on May 13, 1998, it learned that Brasfield had provided the Competing Group with records belonging to Anesthesia and that Brasfield and one of his witnesses had misrepresented this matter at trial. Anesthesia moved the court to consider this evidence, apparently contending that proof of such an act would be a breach of the covenant not to compete or a breach of fiduciary duty. The trial court denied the motion stating as a basis for its decision that Anesthesia failed to properly support its motion and that it failed to indicate why the evidence sought to be proffered could not have been ascertained at an earlier time and before trial.

A party moving to alter or amend a judgment based on newly discovered evidence must demonstrate that the new evidence was not known or ascertainable prior to trial through the exercise of reasonable diligence. *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn.App. 1995). The facts constituting due diligence must be stated with particularity. *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn.App. 1983). Such a motion " should only be granted when it is evident an injustice has been done and a new trial will change the result." *Leeper v. Cook*, 688 S.W.2d 94, 96 (Tenn.App. 1985). The decision to grant or deny a motion based on newly

discovered evidence is within the sound discretion of the trial court. *Seay*, 654 S.W.2d at 400-01.

We find no abuse of discretion in the trial court's decision to deny Anesthesia's motion. The motion was filed without supporting documentation.[2] A mere assertion by a party that he or she has acquired new evidence is not enough. Even if supported with proper affidavits or discovery material, the motion must reflect that the new evidence could not have been ascertained prior to the end of trial through the exercise of due diligence. At the hearing on the motion, Anesthesia's counsel argued that the evidence was not ascertainable prior to trial because the depositions of Brasfield and a member of the Competing Group indicated that no Anesthesia records had been delivered to the Competing Group. Hence, counsel argued, he had no reason to believe otherwise or to search further for information to the contrary. We are of the opinion that these circumstances do not demonstrate that the contrary information was not ascertainable. Rather, these circumstances merely reflect why counsel chose not to inquire further regarding this matter. In point of fact, counsel could have questioned other physicians belonging to the Competing Group but chose not to do so. While the claimed new evidence is not before us and was not before the trial court, Anesthesia's brief indicates that it came from other members of the Competing Group. The source of this information demonstrates to us that it was in fact ascertainable prior to trial. Certainly, the identity of the members of the Competing Group was known prior to trial.

C. *Prejudgment Interest*

The last issue that Anesthesia raises on appeal concerns the trial court's award of prejudgment interest. At trial, Brasfield asserted that his share of the accounts receivable was $230,000 while Anesthesia contended that he was only due $119,857.52. The trial court rendered an opinion the same day finding that Brasfield was entitled to a money judgment but reserving a ruling on the specific amount of the accounts receivable award. Thereafter, the parties failed to agree on an amount; but before the matter was referred to a special master, Anesthesia filed its Motion to Alter or Amend the Judgment.

At the hearing on Brasfield's Motion to Finalize the Judgment and Determine Prejudgment Interest, held on October 14, 1998, Brasfield agreed to Anesthesia's lower calculation of the accounts receivable award. The trial court thus awarded Brasfield $119,857.52 for his accounts receivable and $3,500 pursuant to the parties' stock purchase agreement. Additionally, the court awarded Brasfield prejudgment interest, an award which consisted of two time periods and two interest rates. First, the court awarded prejudgment interest of six percent for the period between August 19, 1997, being one year after Brasfield left the Group, and April 28, 1998, the date of trial. Second, the court awarded prejudgment interest of ten percent for the period between the date of trial and the final hearing date of October 14, 1998. Anesthesia argues on appeal that since Brasfield asserted his entitlement to a higher figure at the time of trial, but ultimately accepted Anesthesia's lower figure, he was responsible for the delay, and thus was not entitled to prejudgment interest for the period between April 28, 1998, and October 14, 1998.

T.C.A. § 47-14-123 provides that "[p]rejudment interest,

i.e., interest as an element of, or in the nature of, damages,...may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum".

In making an award of prejudgment interest, trial courts are to follow several principles.  First, and foremost, the award must be equitable under the circumstances.  *Myint v. Allstate Insurance Company*, 970 S.W.2d 920, 927 (Tenn. 1998); T.C.A. § 47-14-123.  The award must be designed to compensate the injured party rather than punish the other party.  970 S.W.2d at 927.

"[I]f the existence or amount of an obligation is certain, this fact will help support an award of prejudgment interest as a matter of equity."  *Id*. at 928.  For the amount of an obligation to be "certain", it need not be a fixed amount agreed to by the parties.  It merely needs to be "ascertainable by computation or by any recognized standard of valuation."  *Id*. If the obligation meets this test, it is not an impediment to an award that the parties or their experts disagree as to the amount.  *Id*.

The decision to award prejudgment interest is within the sound discretion of the trial court and will not be disturbed by an appellate court absent a "manifest and palpable abuse of discretion."  *Id*. at 927 (quoting *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994)).

In the instant case, it is clear, beyond any doubt, that Brasfield was entitled to compensation under the accounts receivable

provision of the employment agreement.  That paragraph of the agreement provides that termination of the employee's employment, whether voluntary -- as was the case here -- or involuntary, triggers the application of its terms.  That is what the agreement says; hence, the *obligation* was certain, even if the *amount* of that obligation was still to be determined. Anesthesia essentially acknowledges the certainty of the obligation; it simply contends that it is entitled to damages under the covenant not to compete provisions of the agreement and that its damages exceed those of Brasfield's.

We find that the trial court did not abuse its discretion in its award of prejudgment interest for the full period from August 19, 1997, to October 14, 1998.  Though the parties did not initially agree on the amount of the award, the amount due Brasfield was ascertainable by computation.  It matters not that Brasfield initially claimed that he was entitled to a larger award than that to which he ultimately agreed.  The significant fact is that Anesthesia had the use of these funds -- the final award of $119,857.52 -- during the entire period of August 19, 1997, to October 14, 1998, to the exclusion of Brasfield, the individual to whom the funds were due under the holding of the trial court.  For this reason, it is equitable that he be awarded prejudgment interest for the entirety of this relevant period.  Therefore, we find no abuse of discretion with respect to the amount of the award of prejudgment interest.

IV.  *Conclusion*

The judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant.  This case is remanded to the trial

court for enforcement of the judgment and collection of costs assessed below, all pursuant to applicable law.


_____
Charles D. Susano, Jr. J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.