IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2018 Session

## SUGAR CREEK CARRIAGES v. HAT CREEK CARRIAGES, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-1203-III, Ellen Hobbs Lyle, Chancellor**

_____

### No. M2017-00963-COA-R3-CV

_____

This case involves a claim for procurement of breach of contract. The plaintiff and the defendants operate competing businesses that provide carriage rides for hire in Nashville, Tennessee. The plaintiff sued the defendants for violating Tenn. Code Ann. § 47-50-109 by procuring one of its carriage drivers to breach his noncompete agreement with the plaintiff by driving a carriage for the defendants' business. The trial court granted summary judgment in favor of the defendants upon the determination that the plaintiff could not prove an essential element of a procurement of breach of contract claim, that the underlying contract was enforceable. Agreeing with the determination that the noncompete agreement was not enforceable, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

W. Gary Blackburn and Bryant Kroll, Nashville, Tennessee, for the Appellant, Sugar Creek Carriages.

David L. Cooper, Nashville, Tennessee, for the Appellees, Hat Creek Carriages, Elizabeth Luckey, and Samuel Lee Roberts.

### OPINION

Sugar Creek Carriages ("Plaintiff") is a business that provides carriage rides for hire in downtown Nashville, Tennessee. Hat Creek Carriages is a competing business, which is owned by Samuel Roberts, and operated by Elizabeth Luckey (collectively, "Defendants").

Lester Blackwell ("Blackwell") was retained by Plaintiff as a licensed carriage ride driver pursuant to an "Independent Contractor, Non-competition, Non-disclosure, and Confidentiality Agreement" (the "Noncompete Agreement") at all times material to this action. The Noncompete Agreement provided in pertinent part:

> In consideration for the training being given by Sugar Creek Carriages to the Independent Contractor in preparation of becoming a professional horse-drawn carriage operator or independent contractor of Sugar Creek Carriages, the Independent Contractor agrees not to directly or indirectly compete with Sugar Creek Carriages and its successors and assigns for a period of **one year** following his or her termination within the territorial jurisdiction of Davison County, Tennessee. Indirect competition shall be deemed to include the Independent Contractor's position as a shareholder, partner, officer, agent, employee, consultant or independent contractor of any competing business. The parties agree that the actual cost of the training provided by Sugar Creek Carriages to the Independent Contractor is at least two thousand five hundred dollars ($2,500.00). Independent Contractor will pay Sugar Creek Carriages two thousand five hundred dollars ($2,500.00), plus attorney's fees, costs and expenses, should Independent Contractor breach the covenant not to compete contained in this agreement. This sum is agreed on as the proper measure of liquidated damages that Sugar Creek Carriages will sustain in the event Independent Contractor breaches this Agreement.

(emphasis in original).

During the restricted one-year period, Blackwell drove a carriage "one or two times" for Hat Creek Carriages. Upon learning of this fact, Plaintiff commenced this action asserting separate claims against Blackwell and Defendants. The claim against Blackwell was for breach of the Noncompete Agreement. Plaintiff sought to have Blackwell "pony up" the agreed upon liquidated damages of $2500. The claim against Defendants was for procuring Blackwell's breach of his Noncompete Agreement with Plaintiff in violation of Tenn. Code Ann. § 47-50-109, for which Plaintiff sought to recover treble compensatory damages along with attorney's fees and expenses pursuant to the statute. Plaintiff also sought an injunction against Defendants.

Shortly after the action was commenced, Blackwell settled all claims with Plaintiff. Blackwell was dismissed from the action, and he is not a party to this appeal.

Thereafter, Defendants filed a motion for summary judgment on two grounds: (1) the Noncompete Agreement between Plaintiff and Blackwell was unenforceable and (2) the claims against Defendants must be dismissed because Plaintiff could not prove an essential element for recovery under Tenn. Code Ann. § 47-50-109 for procurement of

breach, that the relevant provision of the underlying contract was enforceable. Plaintiff responded, arguing that the Noncompete Agreement was enforceable because Plaintiff had a protectable business interest in the specialized and unique training Plaintiff provided to Blackwell.

The trial court determined that the Noncompete Agreement was unenforceable because Plaintiff's "training is also sold to the public and there are no other factors, such as trade secrets, confidential information or client relations, present in this case weighing in favor of a protectable business interest." Based on this determination and the fact that the existence of an enforceable contract was an essential element of a claim for procurement to breach a contract, the trial court summarily dismissed the complaint. This appeal followed.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

ANALYSIS

The statutory authority on which Plaintiff relies, Tenn. Code Ann. § 47-50-109, reads as follows:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

To establish a claim for procurement of breach of contract, a plaintiff must prove seven elements:

> (1) There must be a legal contract;
> (2) The wrongdoer must have knowledge of the existence of the contract;
> (3) There must be an intention to induce its breach;
> (4) The wrongdoer must have acted with malice;
> (5) There must be a breach of the contract;
> (6) The act complained of must be the proximate cause of the breach of contract; and
> (7) There must have been damages resulting from the breach of the contract.

*Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 354-55 (Tenn. Ct. App. 1999) (citing *Dynamic Motel Mgmt., Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975)).

The dispositive issue in this appeal hinges on the first essential element of Plaintiff's claim, that "there must be a legal contract," meaning Plaintiff's Noncompete Agreement with Blackwell was enforceable.[1] Thus, if the Noncompete Agreement is

---

[1] Plaintiff states the issue as follows:

> Whether highly specialized training in the operation of horse-drawn carriages and in the well-being and control of the animals, which has been exploited by competitors who have lured away at least 13 trained drivers in direct competition with Sugar Creek, manifests a protectable interest sufficient to support a restricted covenant preventing trained operators from driving for competitors for one year in Davidson County?

(continued…)

unenforceable as to Blackwell, Plaintiff's claim against Defendants for procurement of breach of the agreement must fail. Accordingly, we shall focus our attention on the Noncompete Agreement.

The Tennessee Supreme Court summarized the law on covenants not to compete as follows:

> In general, covenants not to compete are disfavored in Tennessee. *See Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). These covenants are viewed as a restraint of trade, and as such, are construed strictly in favor of the employee. *Id*. However, if there is a legitimate business interest to be protected and the time and territorial limitations are reasonable then non-compete agreements are enforceable. *Id*. at 473. Factors relevant to whether a covenant is reasonable include: (1) the consideration supporting the covenant; (2) the threatened danger to the employer in the absence of the covenant; (3) the economic hardship imposed on the employee by the covenant; and (4) whether the covenant is inimical to the public interest. *Id*. at 472-73 (citing *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S .W.2d 361, 363 (1966)). Also, the time and territorial limits must be no greater than necessary to protect the business interest of the employer. *Allright Auto Parks*, 409 S.W.2d at 363.

*Murfreesboro Medical Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005). Aside from these general principles, no simple rule has been formulated to enable the courts to easily determine whether or not a covenant is reasonable; therefore, each case is fact-driven, and must be decided on an ad hoc basis. *Allright Auto Parks*, 409 S.W.2d at 364.

In this appeal, our focus is on one of the basic requirements for enforceability of a covenant not to compete; that is a legitimate interest which is not only properly protectable but actually is protected by the agreement. *See Murfreesboro Medical Clinic*, 166 S.W.3d at 678; *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).

---

Defendants state that the issue as follows:

> Whether the chancery court correctly granted summary judgment to the Defendants after the court determined the Plaintiff could not prove a legally enforceable contract with Lester Blackwell, which is an essential element of any noncompete agreement under Tenn. Code Ann. § 47-50-109, and cause the Defendants to be liable for inducement to breach the agreement?

Plaintiff argues that the training he provided to his independent contractors was highly specialized and costly and, thus, constituted a protectable business interest. The general knowledge and skill of an employee, including the knowledge and skill the employee gains through expensive training provided by the employer, is not a protectable business interest. *Vantage Tech.,* 17 S.W.3d at 644–45. However, "an employer may have a protectable interest in the *unique* knowledge and skill that an employee receives through special training by his employer, at least when such training is present along with other factors tending to show a protectable interest." *Id*. at 645. (Emphasis in original).

The other factors that demonstrate a protectable business interest include:

1. Whether the employee is given access to trade or business secrets or other confidential information; and
2. Whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer.

*Id*. at 644.

Here, the only protectable business interest Plaintiff asserts is the training it provided to Blackwell. Plaintiff does not claim that it gave Blackwell access to confidential information. Further, Plaintiff makes no claim that its customers associate its horse-drawn carriage business with Blackwell due to repeated contacts.

A protectable business interest based solely on the specialized training provided by an employer is contingent on "whether the skill acquired as a result of that training is sufficiently special as to make a competing use of it by the employee unfair." *Id.* at 645. "The training must be truly unique to the industry." *Davis v. Johnstone Group, Inc.*, W2015-01884-COA-R3-CV, 2016 WL 908902, at *5 (Tenn. Ct. App. Mar. 9, 2016). The issue here, however, is not whether the training was sufficiently unique to constitute a protectable interest, but whether the Noncompete Agreement actually protects the interest. *See Murfreesboro Medical Clinic*, 166 S.W.3d at 678; *Vantage Tech., LLC*, 17 S.W.3d at 644.

Based on the fact that the specialized training Plaintiff provided to Blackwell is also provided by Plaintiff to the public, we have determined that the Noncompete Agreement fails to actually protect the protectable interest Plaintiff claims. This is evident from the affidavit of Plaintiff's principal, Johnny Smith:

I offer the training free of charge for new-hires **but anybody is welcome to pay to attend my driving school**, which I provide at a daily rate, the amount of which varies based on the type of training the student needs….I offer a two-day basic course, a one-week advanced course, and a two-week

Advanced Commercial Carriage Driving Class. I also offer training on different types of horses and mules.

(Emphasis added).

Attached to Mr. Smith's affidavit was an advertisement for Plaintiff's classes, which read, "**At the completion of this class, you will be prepared to start [your] own horse-drawn carriage business**." Inexplicably, while Plaintiff prohibits Blackwell from competing with Plaintiff because Blackwell has completed Plaintiff's highly specialized and unique training program, Plaintiff's advertisement for the same training program explicitly invites members of the public to compete with it.

Assuming the specialized training Plaintiff provided to Blackwell is protectable as a matter of law, the Noncompete Agreement fails to protect that interest because it attempts to shut the barn door well after the horses have bolted. As a consequence, the Noncompete Agreement is unenforceable against Blackwell, which is also fatal to Plaintiff's claim against Defendants for procurement of breach of contract.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Sugar Creek Carriages.

_____
FRANK G. CLEMENT JR., P.J., M.S.