# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 15, 2024 Session

## FORT SANDERS REGIONAL MEDICAL CENTER, ET AL. V. AMERICAN ANESTHESIOLOGY OF TENNESSEE, P.C.

**Appeal from the Chancery Court for Knox County**
**No. 207036-2     Richard B. Armstrong, Chancellor**

———————————————

**No. E2023-01340-COA-R3-CV**

———————————————

This is a declaratory judgment action concerning the enforceability of covenants not to compete in the medical field. The trial court held the covenants unenforceable as applied to the plaintiff clinicians who provide anesthesia services at local hospitals in Tennessee. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and KRISTI M. DAVIS, J., joined.

Luther White, Jr. and Jill Dalrymple, Nashville, Tennessee, for the appellant, American Anesthesiology of Tennessee, P.C.

W. Edward Shipe and Avery C. Lovingfoss, Knoxville, Tennessee, for the appellees, Fort Sanders Regional Medical Center and Parkwest Medical Center.

Nathan L. Kinard and Justin L. Furrow, Chattanooga, Tennessee, for the appellees, Gregory Hagopian and CRNA Intervenors.

J. Chadwick Hatmaker and John M. Lawhorn, Knoxville, Tennessee, for the appellees, Michael Baird, M.D. and the Physician and Chief CRNA Intervenors.

# OPINION

## I.   BACKGROUND

American Anesthesiology of Tennessee, P.C. ("AATN")[1] is the medical service provider of anesthesia services for Fort Sanders Regional Medical Center and Parkwest Medical Center (collectively "the Hospitals"), as well as other cities in Tennessee. AATN is a clinical affiliate of NAPA Management Services Corporation ("NMSC"),[2] which is an anesthesia management company that provides back-office administrative and operational support to AATN. NMSC is responsible for, inter alia, assisting AATN in its recruitment of clinicians, billing patients and clients, and privileging and credentialing providers.

There is no contract between AATN and the Hospitals. However, anesthesia services at the Hospitals are solely provided by AATN's 20 anesthesiologists and 93 Certified Registered Nurse Anesthetists ("CRNA") (collectively "Clinicians"). The patients at the Hospitals are then billed by NMSC for AATN's services.

AATN maintains employment agreements with its Clinicians in which AATN has the right to terminate employment under certain circumstances, including if AATN voluntarily decides to terminate its provision of services to certain hospitals or healthcare facilities that operate as the Clinicians' primary service location. In such cases, AATN may impose a 2-year covenant not to compete in which the Clinicians are prohibited from providing services at any health care facility where AATN provided services in the 12 months prior to the employee's termination.

In January 2023, AATN requested a $14 million per year subsidy from Hospitals in consideration of its services provided by Clinicians. AATN cited, inter alia, the rising cost of clinician salaries and the lower reimbursement rates from patients in support of its request. Prior to this, the Hospitals never directly provided payment to AATN. The Hospitals refused payment of the subsidy, prompting AATN to send written notice of its intent, dated March 23, 2023, to cease providing anesthesia services at the Hospitals in 90 days, specifically at 11:59 p.m. on August 22, 2023.

The Hospitals are prohibited from directly hiring Clinicians. Accordingly, the Hospitals' parent company, Covenant Health ("Covenant"), sought to directly hire the Clinicians to avoid closure of the Hospitals. AATN then issued a cease and desist letter threatening to sue Covenant for tortious interference of contract if they met with or

---

[1] In Knoxville, AATN is the successor-in-interest to the owners of an anesthesia services group that began providing services to the Hospitals more than 10 years ago. AATN was purchased by its current owners in 2020.

[2] NMSC is not a party in the instant litigation.

discussed potential employment opportunities with Clinicians. The letter, dated June 7, 2023, and addressed to the Hospitals' CEO and President and also to the Executive Vice President of Operations, provided, in pertinent part, as follows:

> I write on behalf of AATN in connection with the recent activities of [Covenant], including Fort Sanders Regional Medical Center and Parkwest Medical Center (collectively, "Covenant"). It has come to our attention that Covenant is meeting with, and may be discussing potential employment opportunities with, anesthesia clinicians who are employed by AATN ("AATN Clinicians"), so that the AATN Clinicians can render anesthesia services to Fort Sanders Regional Medical Center and Parkwest Medical Center, in place of AATN.

> The purpose of this letter is to put Covenant on notice that the AATN Clinicians are subject to employment agreements with AATN and such employment agreements contain restrictive covenants that prohibit the AATN Clinicians from, among other things, providing anesthesia services at Fort Sanders Regional Medical Center and Parkwest Medical Center following termination of their employment agreements.

> As a result, we direct you to immediately cease and desist from engaging in the conduct described above. Any act by Covenant to interfere with the contractual obligations of the AATN Clinicians will be considered tortious interference, and AATN will pursue all available legal remedies.

On June 23, 2023, the Hospitals, along with two clinicians, Michael Baird, M.D. and Gregory Hagopian (collectively "Plaintiffs"), filed a petition for declaratory judgment to declare the covenants not to compete unenforceable. In support of the petition, Plaintiffs asserted that the Hospitals would be forced to shut down if anesthesia services were unavailable, requiring transfer of all current and future patients to other facilities. Plaintiffs alleged that finding facilities with the capability and capacity to service the area would be extremely difficult and would require the use of every ambulance in the state, the cooperation of numerous facilities, and the activation of the National Guard.

AATN responded with a motion to dismiss, asserting that the Plaintiffs lacked standing to pursue their claims (1) because there was no justiciable controversy and (2) because the Hospitals were requesting judicial interpretation of contracts that they were neither parties to nor third-party beneficiaries of. The trial court held the motion to dismiss in abeyance and requested briefing on the issue of whether the remaining clinicians should be joined as necessary parties. AATN agreed that they should be joined as necessary parties, while Plaintiffs maintained that the necessary parties had been included. However, the remaining clinicians, through counsel for Dr. Baird and Mr. Hagopian, filed a motion to intervene. AATN then argued against their inclusion and requested denial of the motion.

- 3 -

The trial court granted the motion to intervene and denied the motion to dismiss, finding (1) that a case and controversy existed between the parties due to AATN's notice of cessation of services and its cease and desist letter; (2) that the Hospitals are third-party beneficiaries to the employment contract because the Clinicians provide services to the Hospitals on AATN's behalf; and (3) that the Hospitals are necessary parties because the enforceability of the noncompetition clauses directly affects the Hospital's interest.

Following a hearing,[3] the trial court issued an oral ruling from the bench declaring the covenants unenforceable, finding that (1) AATN lacked a legitimate business interest in enforcing the covenants and that (2) enforcement of the covenants would impose a hardship on the Clinicians and a risk to the public. The trial court then issued a written judgment in which it incorporated its oral ruling and certified its judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

## II.     ISSUES

The determinative issues raised on appeal are as follows:

A.      Whether the trial court had subject matter jurisdiction to adjudicate this action.

B.      Whether the trial court erred in granting the motion to intervene.

C.      Whether the trial court erred in finding the covenants not to compete unenforceable.

D.      Whether the trial court erred by failing to modify the covenants to the extent necessary to make them enforceable.

## III.     STANDARD OF REVIEW

Our review of the trial court's decision is de novo upon the record, and the trial court's factual findings are presumed correct, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Alexander v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998). The trial court's conclusions of law are subject to de novo review, with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Ed.*, 58 S.W.3d 706, 710 (Tenn. 2001); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

"In all actions tried upon the facts without a jury, the court shall find the facts

---

[3] A summary of the pertinent testimony will be provided in the analysis.

- 4 -

specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). "Appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

# IV.    DISCUSSION

## A.

As a threshold issue, AATN argues on appeal that the trial court lacked subject matter jurisdiction to consider the petition when there was no justiciable controversy because the employment contracts had not yet been terminated. AATN further asserts that the Hospitals failed to establish their status as third-party beneficiaries to the contract.

"The concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy." *Staats v. McKinnon*, 206 S.W.3d 532, 541–42 (Tenn. Ct. App. 2006) (citations omitted). Parties cannot confer subject matter jurisdiction by appearance, plea, consent, silence, or waiver. *Id.* at 542 (citations omitted). The Tennessee Declaratory Judgment Act ("the Act") grants "courts of record . . . the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-102(a). "The Act also conveys the power to construe or determine the validity of [a contract]." *Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695, 707 (Tenn. 2009) (citing Tenn. Code Ann. § 29-14-103)). The court may construe the contract "before or after there has been a breach." Tenn. Code Ann. § 29-14-104. The Act requires that that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Tenn. Code Ann. § 29-14-107.

A plaintiff in such an action need not show a present injury, but an actual "case" or "controversy" is still required. *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993). A bona fide disagreement must exist; that is, some real interest must be in dispute. *Goetz v. Smith*, 278 S.W. 417, 418 (Tenn. 1925). Indeed, "a declaratory judgment action cannot be used by a court to decide a theoretical question, render an advisory opinion which may help a party in another transaction, or allay fears as to what may occur in the future." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000) (internal citations and quotations omitted).

Here, the enforceability of the covenants not to compete between AATN and the Clinicians directly affects the Hospitals when the Hospitals are dependent upon the Clinicians to provide anesthesiology services, thereby establishing the Hospitals' status as a third-party beneficiary. We hold that the Hospitals were properly included as necessary parties and that a case and controversy existed between the parties due to AATN's notice of cessation of services on a date certain and its cease and desist letter.

B.

AATN argues that the trial court abused its discretion in granting the motion to intervene by permission. Such motions are governed by Rule 24.02 of the Tennessee Rules of Civil Procedure, which provides as follows:

> Upon timely motion any person may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when a movant's claim or defense and the main action have a question of law or fact in common. In exercising discretion the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

During the pendency of this litigation, the court asked the parties to address whether the other clinicians who had employment agreements that were the same as or similar to the employment agreements held by Dr. Baird and Mr. Hagopian were "necessary parties" within the meaning of the Tennessee Declaratory Judgment Act. AATN took the position that they were necessary parties and that the failure to join them as such was further support of the request for dismissal. AATN reasoned as follows:

> [A] decision rendered by this Court about the Employment Agreements of [Dr. Baird and Mr. Hagopian] would likely not lead to finality, but rather would result in additional litigation on the same subject with the other remaining anesthesia providers, whose rights would be affected. Notably, the rights of the remaining anesthesia providers are affected regardless of how the Court ultimately rules on the underlying issue.

The Hospitals argued against their inclusion but ensured that all such clinicians were identified and joined together in a motion to intervene should the court hold that they were necessary parties. The Clinicians adopted and joined in the petition and all other pleadings.

At the hearing on the motion, AATN asserted that denial of the motion was required pursuant to a panel of this court's decision which set forth the following factors in determining whether a permissive motion to intervene was timely:

- 6 -

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*American Materials Technology, Inc. v. City of Chattanooga*, 42 S.W.3d 914, 916 (Tenn. Ct. App. 2000). AATN argued that the motion was untimely when the identity of the Clinicians and their importance was known since the filing of the petition for declaratory judgment. AATN claimed that denial of the motion necessitated dismissal because the Clinicians were necessary parties.

The trial court granted the motion to intervene, finding that the Clinicians "established a common question of law or fact between their claims and those in this action, particularly given that AATN intends to enforce the non-competition clauses in all Intervenors' employment agreements in the same way as" Dr. Baird and Mr. Hagopian's agreements. The court continued,

Common questions of law or fact in this case include, without limitation, the questions of harm and whether the covenants are inimical to the public interest, as well as whether there is a legitimate protectable interest that would justify enforcement of the [agreements] to which Dr. Baird, Mr. Hagopian, and the Intervenors are bound.

In consideration of the factors set forth in *American Materials*, the court held as follows:

[T]he [motion] was timely filed for the purpose of assuring subject matter jurisdiction. The Court specifically determines that: (a) given that the parties are participating in an expedited hearing within 60 days after the suit was filed, and in light of the 90-day timeline created by AATN in its notice of cessation letter . . . the suit has not sufficiently progressed so as to render the Motion untimely; (b) the Motion was not filed to sidestep a procedural misstep, but was filed in response to the Court's question as to whether it has subject-matter jurisdiction; (c) granting the Motion will not change the procedural posture of the case due to the Intervenors' adoption and joinder into the Petition and all other pleadings by the Petition in the Motion to Intervene, (d) the lack of prejudice to AATN, particularly in light of its Memorandum Regarding "Necessary Parties" in the Current Action, in which AATN asserted that failure to add these Intervenors would deprive this Court of the requisite subject matter jurisdiction, and (e) the unusual

circumstances in this case, including its compressed nature and the potential for harm to the public[.]

The trial court's grant of the motion to intervene was a discretionary decision subject to an abuse of discretion standard of review. "An abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is therefore arbitrary, illogical, or unconscionable." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000) (citations omitted). Despite the time constraints present in this action, the trial court issued a well reasoned decision based upon the unique circumstances presented and the pertinent law. We affirm the discretionary decision.

AATN next argues that the trial court still lacked subject matter jurisdiction to consider the action when all other facilities serviced by the Clinicians were not included in the motion to intervene. Plaintiffs note, and we agree, that the inclusion of other facilities not subject to the same threat of the loss of service was not warranted or requested at the trial court level. This issue is without merit.

C.

The parties agree that the employment contracts at issue all contain covenants not to compete for a period of two years should AATN decide to terminate employment under certain circumstances, including a decision to cease providing services at the Hospitals. For the anesthesiologists, the covenant reads:

> Non-Compete. Ancillary to the promises contained in this Agreement, during the Restricted Period (as defined below), Employee will not, without the prior written consent of Employer, engage directly or indirectly in the practice of medicine in the Specialty, either as a shareholder, officer, partner, employee, independent contractor, consultant, manager or owner, or in any other capacity, within the Restricted Area (as defined below), subject to Section XI.I. The "Restricted Area" means: any health care facility, office or other location where the Practice provides services in the Specialty as of the date of termination of this Agreement or during the prior two (2) year period. The "Restricted Period" means while Employee is employed by Employer and a period of two (2) years after this Agreement terminates (whether terminated with or without cause and regardless of who initiated such termination or whether such termination is due to the Employee's resignation, subject to Section XI.I).

For the CRNAs, the covenant reads:

- 8 -

(i) Facilities Serviced by Employee. For purposes of this Section 16, "Customer" shall mean any hospital, ambulatory surgical center, physician's office or other health care facility to which Employer provided Medical Services at any time during Employee's employment with the Employer. Employee agrees that during the Term and for a period of two (2) years following the cessation, for any reason, of Employee's employment with the Employer (the "Restricted Period"), Employee shall not provide Medical Services that are the same as or substantially similar to the Medical Services at any Customer at which Employee provided Medical Services under this Agreement at any time during the twelve (12) months immediately preceding the cessation of Employee's employment with Employer. (ii) Other Facilities. Employee agrees that during the Restricted Period, Employee shall not provide Medical Services at a Customer at which any employee and/or contractor of the Employer, other than Employee, provided Medical Services at any time within the twelve (12) months immediately preceding the cessation of Employee's employment. The restrictions in this Subsection (C)(ii) shall only apply, however, if (a) such Customer is within a thirty (30) mile radius of any Customer where Employee provided Medical Services on behalf of Employer at any time during the 12 months immediately preceding the cessation of Employee's employment, and (b) Employee, during Employee's employment with Employer, was aware of Employer's provision of Medical Services to that Customer.

Accordingly, the approximately 100 Clinicians, including Dr. Baird and Mr. Hagopian, would be estopped from providing services at the Hospitals if the covenants are upheld. AATN argues that the court erred in holding the covenants unenforceable when they were designed to protect AATN from opportunistic disintermediation[4] or the cutting out of the "middleman" to allow its clients to hire their employees directly or through another agency. AATN claims that it holds a legitimate business interest to protect its business model.

Covenants not to compete are generally disfavored in Tennessee and are construed in favor of the employee. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). In determining the enforceability of such covenants, a panel of this court has stated:

[I]f there is a legitimate business interest to be protected and the time and territorial limitations are reasonable then non-compete agreements are enforceable. Factors relevant to whether a covenant is reasonable include: (1) the consideration supporting the covenant; (2) the threatened danger to the employer in the absence of the covenant; (3) the economic hardship

---

[4] As pertinent to this appeal, "disintermediation" is defined as "the elimination of an intermediary in a transaction between two parties." Merriam-Webster Online Dictionary (2024) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.)).

imposed on the employee by the covenant; and (4) whether the covenant is inimical to the public interest.

*Columbus Med. Servs., LLC v. Thomas*, 308 S.W.3d 368, 384 (Tenn. Ct. App. 2009) (citations omitted). This court further noted that "whether the employer has a legitimate business interest . . . that is properly protectable by" a covenant not to compete is a threshold inquiry before determining the issue of reasonableness. *Id.* (citation omitted).

In *Hasty*, our Supreme Court reasoned that whether an employer has a legitimate business interest is dependent upon "special facts present and above ordinary competition." 671 S.W.2d at 473. "These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer." *Id.* To which, this court then expounded,

> Considerations in determining whether an employee would have such an unfair advantage include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer. These considerations may operate individually or in tandem to give rise to a properly protectable business interest.

*Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999) (citations omitted).

Dr. Baird and Mr. Hagopian testified that neither were provided with specialized training by AATN. They explained that they were fully trained following their completion of schooling in their fields, well before their hiring with AATN. They received further on-the-job training while working at the Hospitals, but such training was not provided by AATN. They were also working at the Hospitals prior to AATN's involvement. While Clinicians may be familiar with AATN's business model, such cannot be referred to as a trade secret or confidential information in the medical field that would be helpful to Clinicians. Indeed, Clinicians are versed in the field of anesthesiology, not the inner workings of a medical service provider. The Clinicians are also not responsible for continued care of the patient on behalf of AATN. The Clinicians administer the anesthesia and then return for one follow-up visit with the patient to ensure that the applicable standard of care was met. While AATN operates to staff the Hospitals, it is not a typical staffing agency that engages in the initial recruitment process[5] and maintains a contractual relationship with the Hospitals. The record reflects that NMSC is also responsible for

---

[5] The record reflects that the clinicians do interview with AATN to ensure compatibility after the initial recruitment; however, the onboarding process is then completed by NMSC.

- 10 -

patient billing, leaving no real affiliation between AATN and the patients.  In consideration of the foregoing, we agree with the trial court that AATN failed to establish that it held a legitimate business interest that was properly protected by a covenant not to compete.

Further, the covenants not to compete are unreasonable because they would impose significant financial hardship on the Clinicians and would be inimical to the public interest. The record reflects that the Clinicians were offered the opportunity to apply for positions in other locations but that only 30 positions were available in Knoxville, thereby requiring the Clinicians to move if they did not obtain one of the open positions.  Further, the hiring and credentialing process would take some time to establish the Clinicians at new locations.

The public interest would also be impacted by the failure to provide anesthesia services at the Hospitals.  Specifically, Keith Altshuler, the administrator and president of Fort Sanders, testified that Fort Sanders would not be able to provide the procedures it currently does once the Clinicians are unable to work.  He continued,

> [A] lot of these cases are proceduralists in nature.  A lot of them are urgent and critical care oriented, whether it be labor and delivery, whether it be your stroke care, your surgical kinds of things.  And to me, we must have 130 or so cases every day that are somehow procedurally oriented at just our facility. If you're saying that we can't do those, you're going to have a heck of a problem trying to figure out where you're going to do them, especially if Parkwest can't do them.  I would submit that [University of Tennessee Medical Center ("UT")] can't handle all of this at all.  And these are just procedures.
>
> When you add to that the emergency rooms . . . and all those folks coming in, that they don't know if they need surgery or not.  If they are now having to be routed just to UT, you're going to close down the entire Knox County health delivery system and the trauma system at UT.
>
> * * *
>
> [A]ll the proceduralists that are seen there for surgery now that haven't been done yet and in two days from now are going to have to be cancelled because we wouldn't be able to do that.  We would probably have to go on some type of surgical divert in Knox County, which means EMS in Knox County is going to have to start transferring anything out of our [emergency department], anything that's still in bed that may need a procedure to somewhere, which would be UT.

Deborah Welch, senior vice president of resources for Covenant Health, testified as to the efforts to hire locum CRNAs who could potentially provide services if the Clinicians were

- 11 -

unable to work. She maintained that her efforts had fallen short and that she had only been able to secure 20 locum CRNAs who were set to begin providing services, with an additional 14 who could provide services in the coming months. She maintained that these new hires were not enough to maintain the current caseload of patients at the Hospitals. In consideration of the foregoing, we agree with the trial court that the risk of harm to the employees and the public interest at large outweighs any legitimate business interest held by AATN in its enforcement of the covenants not to compete.

D.

Lastly, AATN claims that the court erred by failing to consider equitable reformation of the contracts as a basis for relief in an effort to balance the competing interests between the employer and employee. Paragraph 16(J) of Mr. Hagopian's agreement addressing the covenant not to compete provides as follows:

> In the event that any of one or more the provisions contained in this Section 16 shall, for any reason, be held to be unenforceable and/or excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed as limited and reduced to the scope and extent allowed by applicable law and/or as directed by a court of competent jurisdiction. in addition, such unenforceability shall not affect any other provision contained in this Agreement.

Similarly, Paragraph XI(G) of Dr. Baird's agreement addressing the covenant not to compete provides as follows:

> In the event that, notwithstanding the foregoing, any part of the covenants set forth in this Section XI shall be held to be invalid, overbroad, or unenforceable by an arbitration panel or a court of competent jurisdiction, the parties hereto agree that such [provisions] shall be modified or severed from this Agreement without, in any manner, affecting the remaining portions hereof (all of which shall remain in full force and effect). In the event that any provision of this Section XI related to time period or areas of restriction shall be declared by an arbitration panel or a court of competent jurisdiction to exceed the maximum time period, area or activities such arbitration panel or court deems reasonable and enforceable, said time period or areas of restriction shall be deemed modified to the minimum extent necessary to make the geographic or temporal restrictions or activities reasonable and enforceable.

In both cases, the covenants not to compete contained other provisions, e.g., an agreement not to solicit patients and other employees and an agreement not to disparage AATN

following the termination of employment, among other clauses.  These provisions were not addressed or rendered unenforceable by the trial court's ruling.

Rather, the court held that the 2-year covenant not to compete in which the Clinicians were prohibited from providing services at any health care facility serviced by AATN was unreasonable and unenforceable under the circumstances presented.  A different time period or the ability to practice in a different specialty would not have made any difference in the court's finding that the enforcement of such provisions was inimical to the public interest given the Hospitals' inability to fill those positions and service the patients in need of anesthesia without the help of the Clinicians.  With all of the above considerations in mind, we affirm the trial court's ultimate decision in holding the covenants not to compete unenforceable.

## V.    CONCLUSION

For the reasons stated above, we affirm the decision of the trial court.  The case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, American Anesthesiology of Tennessee, P.C.

_____
JOHN W. MCCLARTY, JUDGE